Calhoun I.S.D. v. Meno 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00443-CV






Calhoun County Independent School District, Appellant



v.



Lionel R. Meno, et al., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 362,516, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 Appellees Alvarado Independent School District and ninety-one other school
districts (collectively "Alvarado ISD") intervened in the pending school-finance suit seeking
declaratory and injunctive relief against appellant Calhoun County Independent School District
and appellees Lionel R. Meno, State Commissioner of Education, and John Sharp, State
Comptroller. Alvarado ISD sought such relief to prevent Calhoun County ISD from obtaining
an extended reduction in the taxable value of the district's property by lengthening the duration
of an existing tax-abatement agreement with a commercial entity. The district court granted the
requested declaratory relief. Calhoun County ISD appeals, asserting that the district court
misconstrued the relevant statutes. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 In order to determine how much money a school district will receive from the
state's general tax revenues, the Comptroller annually certifies to the Commissioner of Education the district's total taxable property wealth. Tex. Educ. Code Ann. § 11.86 (West Supp. 1995). 
The Commissioner of Education then uses that figure to calculate the amount of local tax revenue
the district will be able to raise at its current tax rate. Educ. Code §§ 16.252, .302 (West Supp.
1995). The difference between projected local revenue (plus revenue allocated from the "available
school fund") and the revenue level that the state is willing to guarantee is then made up by the
state from general tax revenues. Educ. Code § 16.254(a), (c), (d).

 School districts and other local governmental entities are authorized under certain
circumstances to grant tax abatements to property owners for the purpose of reinvestment and
redevelopment of property. Tex. Tax Code Ann. §§ 312.001-.402 (West 1992 & Supp. 1995). 
The Tax Code permits modification of tax-abatement agreements at any time before the agreement
expires, as long as the modification does not extend the agreement beyond ten years from the date
of the original agreement. Tax Code § 312.208(a). Tax abatements are generally used as
incentives to encourage businesses to locate within the boundaries of the district. In theory, such
tax abatements will benefit the district in the long run, because the new businesses will increase
the value of the district's local tax base. In the short run, of course, the district receives less local
property tax revenue than would have been due without the abatement.

 Before 1993, the Comptroller was directed to exclude from the calculation of a
school district's local property wealth the value of all property on which taxes were currently
exempted pursuant to an abatement agreement. Specifically, former section 11.86(a)(2)(2) of the
Education Code instructed the Comptroller to deduct from taxable value "the total dollar amount
of any exemptions granted within a reinvestment zone under agreements authorized by the
Property Redevelopment and Tax Abatement Act (Chapter 312, Tax Code)." Act of May 24,
1991, 72d Leg., R.S., ch. 843, § 2, 1991 Tex. Gen. Laws 2905, 2906 (Educ. Code
§ 11.86(a)(2)(2), since amended). Because any such abatement agreement temporarily decreased
the amount of local revenue the district could generate, any district granting an abatement received
a greater amount of state aid under the formulas described above.

 In May 1993 the legislature passed an act, usually referred to as Senate Bill 7,
which significantly amended the Education Code. See Act of May 28, 1993, 73d Leg., R.S., ch.
347, §§ 1.01-9.02, 1993 Tex. Gen. Laws 1479. Senate Bill 7, the state's fourth attempt to correct
problems in the school-finance system, was passed in response to the mandates of the Texas
Supreme Court in Carrollton-Farmers Branch Independent School District v. Edgewood
Independent School District, 826 S.W.2d 489 (Tex. 1992). The provisions of Senate Bill 7
evidence a strong public policy favoring equal access to similar educational resources for all
school children, regardless of where they live in the state.

 Newly enacted chapter 36 of the Education Code, which was at the heart of Senate
Bill 7, is designed to equalize the wealth per student in all Texas school districts. Educ. Code
§§ 36.001-.257 (West Supp. 1995). Under that chapter, the Comptroller uses the district's taxable
property value to determine the district's "wealth per student." Educ. Code §§ 36.001(2), .004. 
A school district's wealth per student exceeding $280,000 is considered wealth available to the
state system, rather than to the individual school district. Educ. Code § 36.002(a). School
districts with per-student wealth levels exceeding $280,000 may choose from a list of options to
bring their wealth level within the mandate. These options include: (1) consolidation with another
district; (2) detachment of territory; (3) purchase of average daily attendance credit; (4)
contracting for the education of nonresident students; and (5) tax base consolidation with another
district. Educ. Code § 36.003. Tax abatements are not listed as an option available to school
districts to achieve the equalized wealth level. If a district with wealth per student exceeding the
equalized wealth level has not chosen one of the foregoing options by September 1 of a given
year, the Commissioner of Education must detach property from that district to bring its wealth
per student to within $10,000 of the equalized wealth level. Educ. Code §§ 36.205, .206. If
detaching property will not suffice, the Commissioner must consolidate the wealthy district with
one or more poorer school districts. Educ. Code §§ 36.251, .252.

 To deal specifically with the effect of tax-abatement agreements on school-district
wealth computation, Senate Bill 7 amended section 11.86 of the Education Code to require that
the Comptroller deduct from a district's taxable value "the total dollar amount of any abatements
granted before May 31, 1993, within a reinvestment zone under agreements authorized by the
Property Redevelopment and Tax Abatement Act (Chapter 312, Tax Code)." Educ. Code
§ 11.86(a)(2)(2) (emphasis added). In addition, newly enacted section 36.008 of the Education
Code provides that "[t]he commissioner shall determine the wealth per student of a school district
under this chapter as if any tax abatement agreement executed by a school district on or after May
31, 1993, had not been executed." Educ. Code § 36.008(b). These provisions evidence a clear
legislative intent to freeze, beginning May 31, 1993, the effect such abatements have on the
computation of a school district's wealth.

 In the present case, Calhoun County ISD proposed (after May 31, 1993) to extend
from seven to ten years the duration of three existing tax-abatement agreements with Formosa
Plastics Corporation in exchange for Formosa's agreement to make a donation to the school
district at the end of the original tax-abatement period. Calhoun County ISD intended that, during
the period of extension, the Comptroller would continue to exclude the value of Formosa's
property when calculating the school district's total taxable property value. Various newspapers
announced Calhoun County ISD's intention.

 Alvarado ISD intervened in the pending school-finance suit seeking injunctive and
declaratory relief. On motion of Alvarado ISD, the district court declared:


[A]lthough Texas Education Code, § 11.86, as amended by S.B. No. 7 does not
prohibit a school district from granting tax abatements after May 31, 1993, any
such abatement granted after that date may not be excluded by the Comptroller for
purposes of calculation of the School District's total taxable value. In addition,
Texas Education Code, § 11.86, as amended by S.B. No. 7, does not prohibit an
otherwise legal extension or modification of all [sic] existing tax abatement, nor
does it prohibit the Comptroller from excluding the value of an existing tax
abatement covered by a modification that neither increases the percentage or
amount of property value abated nor extends the period of time for which the
abatement was granted. However, Educ. Code § 11.86 does not permit the
Comptroller to exclude for purposes of calculation of the school district's total
taxable value the additional percentage or value of any property covered by a
modification of an abatement or the additional period of time covered by an
extension of such an abatement. All such extensions or modifications entered into
after May 31, 1993 must be included by the Comptroller for purposes of
calculation of the school district's total taxable value.


The district court also ordered Calhoun County ISD to pay attorney's fees to Alvarado ISD. All
issues relating to Alvarado ISD's request for declaratory and injunctive relief were then severed
from other proceedings and issues that remained pending in the suit.



DISCUSSION


 This case presents the question of whether a post-May 31, 1993 extension of a pre-May 31, 1993 tax-abatement agreement constitutes a "new" tax abatement subject to amended
section 11.86 of the Education Code and the other provisions of Senate Bill 7. We conclude that
it does.

 Section 312.208 of the Tax Code is a general statute dealing with any modification
of a tax-abatement agreement. The district court's declaratory judgment does not invoke section
312.208 because that provision does not restrict Calhoun County ISD from modifying its tax-abatement agreement with Formosa. Section 11.86 of the Education Code, on the other hand, is
a specific provision mandating how the Comptroller must report school district property values
to the Commissioner of Education and allowing only the dollar amount of an abatement granted
before May 31, 1993 to be deducted from the taxable value of the district's property. Generally,
a specific statute will control over a statute of more general application. Stinnett v. Williamson
County Sheriff's Dep't, 858 S.W.2d 573, 576 (Tex. App.Austin 1993, writ denied); Mai v. Mai,
853 S.W.2d 615, 622 (Tex. App.Houston [1st Dist.] 1993, no writ).

 Legislative intent to immunize the school-finance system from future tax-abatement
agreements was reiterated in section 36.008 of the Education Code, which requires the
Commissioner of Education to determine the district wealth as if any tax abatement granted on or
after May 31, 1993 had not been executed. Giving effect to the newer and more specific sections
11.86 and 36.008 of the Education Code is not inconsistent with Chapter 312 of the Tax Code. 
Calhoun County ISD's interpretation of section 312.208 of the Tax Code, however, would permit
property-rich school districts to evade the clear intent of Senate Bill 7 and effectively undermine
sections 11.86 and 36.008 of the Education Code. This Court is loath to put an individual school
district's interest over the state's interest in the school-finance system as a whole.

 Calhoun County ISD also argues that correspondence from the Comptroller to
Arlington Independent School District shows that an extension of an existing tax abatement is not
a new tax-abatement agreement subject to Senate Bill 7. We disagree. Arlington ISD requested
advice from the Comptroller regarding whether a renegotiated tax abatement agreement constitutes
a new tax abatement subject to the provisions of amended section 11.86(a)(2)(2) of the Education
Code. The request involved the reduction of a previously granted tax abatement. In that instance,
the Comptroller responded by a letter dated October 4, 1993 that Arlington ISD's modification
of an existing agreement to effect a reduction of an abatement did not create a new tax abatement
agreement for purposes of Senate Bill 7.

 We believe the Comptroller was simply attempting to reconcile section 312.208 of
the Tax Code, which allows modifications of existing agreements, with the provisions of Senate
Bill 7, which does not permit a deduction of value for tax abatements granted after May 31, 1993. 
The situation addressed in the Comptroller's letter does not resemble the situation presented by
Calhoun County ISD here. Rather than reducing an existing tax abatement, Calhoun County ISD
proposed to extend (to the maximum ten years) three existing seven-year tax-abatement agreements
it had previously entered into with Formosa Plastics. In exchange, Formosa would make a
donation to Calhoun County ISD at the end of the original tax-break period. This modification
would clearly increase the total dollar amount of Calhoun County ISD's existing agreements with
Formosa by lengthening the time that Calhoun County ISD's taxable value was reduced,
effectively taking millions of dollars off the district's tax rolls and making less money available
to the statewide school-finance system.

 Calhoun County ISD next argues that because the Comptroller's office is the
administrative agency charged with enforcement of section 11.86 of the Education Code, this
Court should defer to the Comptroller's interpretation in his October 4, 1993 letter to Arlington
ISD. In light of the particular situation addressed by the Comptroller's letter, however, we do
not believe its conclusion is inconsistent with the result we reach here. The letter's language,
while broad, should not be taken out of context or divorced from the specific factual setting being
addressed by the Comptroller. In any event, an administrative agency's interpretation of a statute
is never absolutely binding on this Court, Bullock v. Ramada Tex., Inc., 609 S.W.2d 537, 539
(Tex. 1980), and will not be followed "when contrary to the intention of the Legislature as
disclosed by the provisions of the act," Lyon v. State, 766 S.W.2d 879, 884 (Tex. App.Austin
1989, pet. ref'd).

 Finally, in support of its position, Calhoun County ISD quotes a remark made to
the district court by an attorney for the Comptroller and Commissioner of Education as evidence
of legislative intent that tax abatements can be used to equalize wealth. We do not believe,
however, that such statements are entitled to any significant weight in this context. Since the
intent or opinion of an individual legislator, even an act's principal author, does not control the
construction to be given the statute, General Chemical Corp. v. De La Lastra, 852 S.W.2d 916,
923 (Tex.), cert. dism'd, 114 S.Ct. 490 (1993), certainly any discussion between the district court
and an attorney representing the state cannot be controlling.

 In interpreting a statute, we presume that the legislature intended to give effect to
the entire statute, to promote a just and reasonable result, and to favor the public interest over any
private interest. Tex. Gov't Code Ann. § 311.021 (West 1988). Allowing Calhoun County ISD
to circumvent Senate Bill 7 and the state's school-finance plan by having the value of Formosa's
property excluded from the district's total taxable value during the period of the extension of the
tax-abatement agreement would not produce a just and reasonable result and would not favor the
public interest. Treating a post-May 31, 1993 extension as a pre-May 31, 1993 abatement
agreement would contradict the intent of Chapter 36 of the Education Code by allowing property-rich districts to circumvent, at least temporarily, the policies and procedures that were established
by Senate Bill 7 to equalize the wealth of school districts in this state. It is inconceivable that the
legislature intended such a result. We conclude that the district court correctly held that the
Comptroller may not, when determining a school district's total taxable value, use an abatement
extension granted after May 31, 1993 as a basis for excluding the value of the subject property
during the period of extension. We overrule point of error one.

 In its second point of error, Calhoun County ISD argues that the trial court abused
its discretion by ordering it to pay Alvarado ISD's attorney's fees. In light of our disposition of
the first point of error, and in light of the fact that Calhoun County ISD does not challenge the
amount of attorney's fees awarded, we overrule point of error two.




CONCLUSION


 We affirm the judgment of the district court.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: July 12, 1995

Publish