OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



October 28, 1999

The Honorable Sonya Letson
Potter County Attorney
500 South Fillmore, Room 303
Amarillo, Texas 79101

Opinion No. JC-0133

Re: Whether tax abatement may be granted to owner of property that was subject of a previous ten-year tax abatement agreement under chapter 312 of the Tax Code, and related question (RQ-0077-JC)

Dear Ms. Letson:

Chapter 312 of the Tax Code, the Property Redevelopment and Tax Abatement Act, authorizes municipalities and other local taxing units to grant tax abatements to property owners, under certain circumstances, for the purpose of economic development of property located in a reinvestment zone. You ask two questions regarding the allowable duration of tax abatement agreements under chapter 312.

A tax abatement agreement made pursuant to chapter 312 of the Tax Code may not exceed ten years: "The governing body of a municipality . . . may agree in writing with the owner of taxable real property . . . to exempt from taxation a portion of the value of the real property . . . for a period not to exceed 10 years . . . ." TEX. TAX CODE ANN. § 312.204(a) (Vernon 1992). An agreement may be modified to extend its duration at any time before the expiration of the agreement. *Id.* § 312.208(a). However, the original agreement may not be modified to extend beyond ten years from the date of the original agreement. *Id.*

Before September 1, 1989, tax abatement agreements could be made for a period of up to fifteen years. In 1989, the legislature amended chapter 312 to shorten the maximum duration of a tax abatement agreement from fifteen years to the current ten years. *See* Act of May 24, 1989, 71st Leg., R.S., ch. 1137, §§ 7, 10, 1989 Tex. Gen. Laws 4683, 4685-87. The change became effective on September 1, 1989. *Id.* § 29 at 4692-93. Agreements entered into before the effective date of the amendment were not affected. *Id.*

You tell us that in 1988 the City of Amarillo entered into a tax abatement agreement with the owner of certain real property located in a reinvestment zone. *See* Letter from Honorable Sonya Letson, Potter County Attorney, to Honorable John Cornyn, Attorney General (June 10, 1999) [hereinafter "Request Letter"]. At that time, section 312.204 of the Tax Code allowed tax abatement agreements to last as long as fifteen years. The initial term of the agreement was five years, beginning on January 1, 1989. *Id.* at 1. But the agreement was "renewable" for two additional

periods of five years, for a total of fifteen years, if the property owner met certain employment goals. *Id.*

The property owner met its employment goals, and the tax abatement agreement was extended for a second period of five years, beginning on January 1, 1994. *Id.* Again, the agreement set certain employment goals for the property owner which, if met, would allow the agreement to be extended for an additional five-year period. *Id.* at 2.

The employment goals were met again by the end of the second five-year period. *Id.* However, the property that was the subject of the agreement had a new owner. *Id.* You describe the new owner as the "successor in interest" to the previous owner, but you also say that there is a possibility that the two owners are the same entity. *Id.* In any event, in 1998 the City entered into a new tax abatement agreement with the new owner of the property. You tell us that the agreement is "new" but that its preamble states that it "is for the general purpose of continuing a tax abatement agreement on improvements constructed on the herein-described property." *Id.* The agreement is for a five-year period beginning January 1, 1999. *Id.* You inform us that Potter County and other taxing entities entered into tax abatement agreements with the new owner under the same terms. *Id.*

You ask whether a governmental entity may grant a tax abatement to the owner of property that was previously the subject of a ten-year tax abatement agreement. We conclude that it may not. We do not decide, however, whether such a tax abatement agreement was entered into in the particular case that you describe.

Section 312.204 of the Tax Code limits a tax abatement agreement with a property owner to ten years. TEX. TAX CODE ANN. § 312.204(a) (Vernon 1992). It does not expressly prohibit subsequent ten-year agreements with respect to the same property. Thus, as your letter points out, it might be argued that after the expiration of one ten-year tax abatement agreement, a governmental body may enter into subsequent tax abatement agreements with the property owner provided no single agreement is for a period of more than ten years. We disagree with this argument.

In interpreting a statute, we presume that the legislature intended to give effect to the entire statute, to promote a just and reasonable result, and to favor the public interest over any private interest. TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998). If section 312.204 were construed to permit subsequent tax abatement agreements on the same piece of property, it would allow ten-year agreements to be entered into one after the other, potentially resulting in taxes being abated on a piece of property for an unlimited length of time. We do not believe that the legislature intended such a result.

The constitutional provision authorizing the Property Redevelopment and Tax Abatement Act states that tax relief may be provided "for the purpose of encouraging development or redevelopment and improvement" of property. TEX. CONST. art. VIII, § 1-g(a). In our view, the purpose of the Act is to spur economic development in an area: to give the area an economic boost,

so to speak. The statute's ultimate goal is to increase an area's tax base, not to remove taxable property from it.

When the maximum duration of a tax abatement agreement was changed from fifteen years to ten years, supporters of the change argued that the shorter period would more quickly return the property to the tax rolls:

> Shortening the maximum duration of abatement agreements would ensure that abated property finds its way onto the tax rolls before depreciation makes the property obsolete. The ten-year limit would bring Texas in line with a majority of other states and ensure that the abated property eventually becomes a part of the local property tax base.

HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 2392, 71st Leg., R.S. 3 (May 11, 1989) (companion to S.B. 1312). Similarly, a court of appeals described chapter 312 tax abatements as increasing the local tax base in the long run and decreasing tax revenue only in the short run. *See Calhoun County Indep. Sch. Dist. v. Meno*, 902 S.W.2d 748, 749 (Tex. App.–Austin 1995, writ denied). We likewise find no purpose for the ten-year limit other than to make certain that the property is returned to the tax rolls. Allowing successive ten-year agreements on the same property would defeat this purpose.

You point out that because section 312.204 refers to tax abatement agreements with the *owner* of taxable real property, it might be argued that following a ten-year agreement with the owner of a piece of property, a governmental body may enter into a new ten-year agreement with a new owner of the same property. We also find this argument incompatible with the purpose of the tax abatement law. Such a construction could result in successive abatement agreements on the same piece of property, provided each agreement is with a different owner. Again, it has the potential of forestalling indefinitely the return of property to the tax rolls. Accordingly, we conclude that a governmental entity may not grant a tax abatement to a new owner of the same property that previously received a ten-year tax abatement.

You also ask whether the 1989 amendment to section 312.204 of the Tax Code, changing the maximum duration of a tax abatement agreement from fifteen years to ten years, prohibits the City of Amarillo from granting a tax abatement for a total of fifteen years pursuant to the agreement described in your letter. We conclude that section 312.204 permits a city to complete the terms of a fifteen-year tax abatement agreement executed prior to September 1, 1989, the effective date of the amendment. We do not decide, however, whether the agreement about which you ask is a fifteen-year agreement executed prior to September 1, 1989.

The act adopting the ten-year limit on tax abatement agreements provides that it does not affect agreements executed before the act's effective date:

> The change in law made by this Act to Section 312.204, Tax Code, relating to the duration of a tax abatement agreement applies only to an agreement executed on or after the effective date of this Act. An agreement executed before the effective date of this Act is governed by Section 312.204, Tax Code, or by former Article 1066f, Vernon's Texas Civil Statutes, as applicable, as the law existed when the agreement was executed.

Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 29(b), 1989 Tex. Gen. Laws 4683, 4692. Thus, a governmental body could honor the terms of a fifteen-year tax abatement agreement executed before September 1, 1989.

A tax abatement agreement executed prior to the effective date of the new law could be modified to extend beyond ten years, but only if the modification occurred before the effective date of the new law:

> The change in law made by this Act to Subsection (a), Section 312.208, Tax Code, relating to the extension of a tax abatement agreement applies to an extension of an agreement that occurs on or after the effective date of this Act even if the agreement was originally executed before the effective date. The change in Subsection (a), Section 312.208, Tax Code, made by this Act does *not affect the validity of an extension made before the effective date.*

*Id.* § 29(c), at 4692. Thus, a tax abatement agreement could last for as many as fifteen years if the agreement was entered into or modified to establish that length before September 1, 1989. Modifications made after September 1, 1989, are governed by the new law and thus are limited to ten years.

You tell us that the City of Amarillo entered into a tax abatement agreement in 1988 that was for an initial period of five years, but which was "renewable" to last as many as fifteen years if certain conditions were met. *See* Request Letter, *supra*, at 1. Then, you tell us that the original agreement was "extended" for a second period of five years, beginning on January 1, 1994. *Id.* Finally, you tell us that in 1998, the city entered into a "new" five-year tax abatement agreement with the new owner of the property, although the agreement's preamble states that it "is for the general purpose of continuing a tax abatement [agreement] on improvements constructed on the herein-described property." *Id.* at 2.

It is unclear to us whether the original agreement you describe was a five-year agreement or a fifteen-year agreement. In order for the original agreement to have been a fifteen-year agreement,

it would have to have bound the City to the tax abatement for fifteen years if the conditions of the agreement were met by the property owner. If the City had the option of ending the agreement after five years, even if the conditions were met, then the city was bound for only five years and the agreement was a five-year agreement.

If the original 1988 agreement was a fifteen-year agreement and the 1998 agreement is merely a continuation of the agreement, then it is not affected by the change in the law, because the new ten-year limitation did not affect agreements in existence before September 1, 1989. However, if the 1988 agreement was a five-year agreement that could be extended or renewed twice, then the 1998 agreement is invalid because it would extend the tax abatement on the property to a period of more than ten years from the original agreement, and the extension was not made before September 1, 1989. Likewise, if the 1998 agreement is a completely new agreement for the same property, it is also invalid, since it would constitute a new agreement on property that was previously the subject of a ten-year tax abatement.

In sum, in order for a piece of property to receive fifteen years of tax abatement pursuant to chapter 312 of the Tax Code, the agreement for the fifteen-year abatement must have been executed prior to September 1, 1989. The factual matters surrounding the tax abatement agreement you describe are unclear, and normally this office neither determines facts nor construes contracts. Therefore, we do not determine whether the particular tax abatement agreement about which you ask is valid.

## S U M M A R Y

A tax abatement agreement made pursuant to chapter 312 of the Tax Code, the Property Redevelopment and Tax Abatement Act, may not exceed ten years. A governmental entity may not grant a tax abatement for property that previously received a ten-year tax abatement. In order for property to receive more than ten years of tax abatement, the agreement for the abatement must have been made prior to September 1, 1989.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General - Opinion Committee