TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00064-CV







Coalition of Texans with Disabilities, Appellant



v.



Tommy V. Smith, Former Commissioner of Licensing and Regulation for Department


of Licensing and Regulation, in His Official Capacity; Rachelle A. Martin,


Executive Director of TDLR; and Members of the Texas Commission


of Licensing and Regulation, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 97-08500, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING






 

 The Coalition of Texans with Disabilities ("Coalition"), on behalf of its members,
sued appellees as representatives of the Texas Department of Licensing and Regulation (1) and its
governing body, the Texas Commission of Licensing and Regulation (collectively the
"Department"), for a declaratory judgment concerning the interpretation of a provision of the
Architectural Barriers Act ("Act"). (2) The parties filed cross-motions for summary judgment. The
district court granted summary judgment in favor of the Department. We reverse the district court
judgment, render judgment that the Department's interpretation is unreasonable, and remand for
further proceedings.


THE CONTROVERSY

 The purpose of the Act is "to eliminate, insofar as possible, unnecessary barriers
encountered by persons with disabilities" to public buildings and private buildings that are defined
by the Americans with Disabilities Act of 1990 as "public accommodations" or "commercial
facilities." (3) See Tex. Rev. Civ. Stat. Ann. art. 9102, §§ 1, 2 (West Supp. 1999). The application
of the Act is limited to public buildings or facilities constructed or substantially renovated on or
after January 1, 1970, privately funded buildings or facilities defined as "public accommodations"
constructed or substantially renovated on or after January 1, 1992, and privately funded buildings
or facilities defined as "commercial facilities" constructed or substantially renovated on or after
September 1, 1993. See id. § 2(a). The Act confers upon the Department the responsibilities of
reviewing plans and specifications for structures covered by the Act, making inspections, issuing
certificates of compliance, and imposing administrative penalties for Act violations. See id. § 5.

 In 1995, the Texas Legislature enacted House Bill 1612, which added a new section
to the Act concerning the Act's application to religious facilities. The bill, which became effective
on June 14, 1995, provides: "The standards adopted under this article do not apply to a place
used primarily for religious rituals within either a building or facility of a religious organization." 
Id. § 2(g). In August 1995, the Department requested a clarification of legislative intent from
Representative Dan Kubiak, who filed the bill, and Representative Paul Moreno. Both
representatives opined that the intent of the bill was to differentiate between areas used by a
congregation for seating, which should comply with accessibility standards, and areas within the
place of worship where religious acts are performed, such as an altar, baptismal font,
confessional, sanctuary, dais or speaking podium, or choir loft, which should be exempt. In
March 1996, the bill's Senate sponsor, Senator David Sibley, wrote the Department to express
his belief that the legislative intent of House Bill 1612 was to exempt the entire building in which
a religious ritual takes place from the accessibility requirements of the Act.

 On May 10, 1996, the Deputy Executive Director of the Department issued a
memorandum concerning the appropriate interpretation of the new language. The memorandum
reads as follows:


For facilities which were built primarily for religious purposes (i.e., church,
synagogue, etc.), the entire building in which a religious ritual is held (i.e.,
baptism, etc.) is exempt. All rooms attached directly to the building (i.e., entered
through a doorway or hall that does not require going outside) are included.


If there are buildings which are unattached to the building in which a religious
ritual is held (i.e., cannot be entered without going outside), they are not exempt
if they fall under the public accommodation definition even if a portion of the
facility may on occasion be used for religious rituals.


In facilities or buildings which were not built primarily for religious purposes (i.e.,
hospitals, colleges, shopping centers, private schools, fellowship halls, activity
buildings, places of gathering, etc.), only that portion of a building used primarily
for religious purposes (i.e., chapel, etc.) is exempt.



The Department applied this interpretation to religious facilities under review and determined that
none of the facilities were subject to the accessibility requirements of the Act.

 The Coalition sued seeking a declaratory judgment that the correct interpretation
of section 2(g) is to exempt only places that are used primarily for religious rituals within either
a building or facility of a religious organization, "but not other inside areas or outside areas that
provide access to the building itself." The district court denied the Coalition's motion for
summary judgment and granted summary judgment in favor of the Department.


DISCUSSION

 Before reaching the merits, we first consider the Department's contention that the
Coalition has no standing to challenge the Department's interpretation of section 2(g). Because
standing is a component of subject matter jurisdiction, we consider the Coalition's standing under
the same standard by which we review subject matter jurisdiction generally. See Texas Ass'n of
Business v. Texas Air Control Bd., 852 S.W.2d 440, 445-46 (Tex. 1993) (citing Richardson v.
First Nat'l Life Ins. Co., 419 S.W.2d 836, 839 (Tex. 1967)). That standard requires the pleader
to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. See id.

 In its original petition, the Coalition argued that the Department's unreasonable
interpretation of the unambiguous language of section 2(g) harms disabled persons by denying
them access to religious facilities. The Department, in a plea to the jurisdiction, asserted that the
Coalition failed to identify a building that is illegally inaccessible to disabled persons or to
otherwise demonstrate how the Department's interpretation of section 2(g) has harmed any of the
Coalition's members. The Department also filed special exceptions to the Coalition's original
petition, asserting, among other things, that the petition in its entirety "fails to assert a claim that
is ripe for adjudication."

 The district court denied the Department's plea to the jurisdiction but granted the
special exception concerning ripeness and ordered the Coalition to replead. In its first amended
petition, the Coalition identified sixteen religious facilities exempted from compliance with the
Act based on the Department's interpretation of section 2(g). The Coalition also filed the
affidavits of Ernalea Peters, her daughter Carolyn Cole, and Mary Kay Sanders, which describe
difficulties encountered in gaining access to a religious facility in New Braunfels and one in
Austin. After both parties filed motions for summary judgment, the Coalition again amended its
petition, adding Sanders as a plaintiff and alleging that an Austin religious facility has undergone
substantial renovations in the recent past but still remains inaccessible to Sanders and other
wheelchair-bound parishioners. The Department contends that the Coalition has no standing to sue on behalf of its
members because it has not shown that an individual it represents has been harmed by the
Department's interpretation of section 2(g). The Department argues that the Coalition's pleadings
merely identify various religious facilities that have been exempted from the requirements of the
Act without showing that these facilities are inaccessible to the disabled. The Department also
argues that the affidavits of Peters, Cole, and Sanders--the Coalition's only evidence of individuals
being denied access to specific religious facilities--do not contain any allegations of recent
construction or renovation that would bring the facilities within the ambit of the Act.

 For the Coalition to maintain an action on behalf of its members, its pleadings must
show the following: (1) Coalition members would otherwise have standing to sue in their own
right; (2) the interests the Coalition seeks to protect are germane to its organizational purpose; and
(3) neither the claim asserted nor the relief requested requires the participation of individual
members in the lawsuit. See Texas Ass'n of Business, 852 S.W.2d at 447. To satisfy the first
prong of the associational standing test, the Coalition must allege that its members, or any one of
them, are suffering immediate or threatened injury as a result of the challenged action of the kind
that would make a justiciable case if the members had brought suit in their own right. See Texas
Workers' Compensation Comm'n v. Garcia, 862 S.W.2d 61, 71 (Tex. App.--San Antonio), rev'd
on other grounds, 893 S.W.2d 504 (Tex. 1995). A substantial risk of injury is sufficient. See
id. (citing Texas Ass'n of Business, 852 S.W.2d at 447); see also Pennell v. City of San Jose, 485
U.S. 1, 7 (1988) (association of landlords had standing based on pleadings that members would
likely be harmed by rent ordinance).

 The undisputed summary judgment evidence establishes that appellant is a statewide
coalition of 1600 members and forty organizations formed to advocate the interests of disabled
Texans. The Coalition alleged in its second amended petition that "[a] great number" of its
members have a "disability" within the meaning of the Act and are unable to access religious
buildings and facilities. To support its allegation, the Coalition introduced the affidavit of one of
its members, Mary Kay Sanders, who requires a wheelchair for mobility. Sanders testified that
she would like to make full use of the facilities of her church but cannot due to the church's many
inaccessible features. The Coalition also alleged that the church has undertaken major renovations
and construction "since [the] operative date of the law at issue."

 Because the Coalition has named a member who would have standing to sue in her
own right, it has satisfied the first prong of the associational standing test. See Texas Rivers
Protection Ass'n v. Texas Natural Resource Conservation Comm'n, 910 S.W.2d 147, 152 n.2
(Tex. App.--Austin 1995, writ denied). Even assuming that the Coalition had failed to identify
Sanders as a member, we are satisfied that it has adequately alleged that its other members remain
at substantial risk of harm. The record establishes that the Department, in applying its
interpretation of section 2(g), has ceased to engage in meaningful review of the plans and
specifications of religious buildings or facilities. Instead, the Department has consistently
concluded that religious buildings or facilities are simply not subject to the requirements of the
Act. Thus, it is not speculative to conclude that the Department's interpretation of section 2(g)
will result in the continuing exemption of all religious buildings or facilities to the detriment of
the members of the Coalition. See Texas Ass'n of Business, 852 S.W.2d at 447; Garcia, 862
S.W.2d at 71.

 We also conclude that the Coalition has satisfied the second and third prongs of the
test of associational standing. The interests the Coalition seeks to protect, those of disabled
persons seeking access to religious facilities, are undoubtedly germane to its stated purpose of
advocating "for civil rights and equal opportunity" for disabled Texans. The Coalition's
pleadings and the record also demonstrate that neither the claim asserted nor the relief requested
require the participation of the Coalition's individual members. The Coalition seeks a declaration
that the correct interpretation of section 2(g) is to exempt only places that are used primarily for
religious rituals within either a building or facility of a religious organization. The Coalition need
not prove the individual circumstances of its members to obtain this relief, and it can reasonably
be supposed that if the declaration is granted, its benefits will inure to those members of the
Coalition actually injured. See Texas Ass'n of Business, 852 S.W.2d at 448. Having reviewed
the record in its entirety for evidence supporting subject matter jurisdiction, and resolving any
doubt in the Coalition's favor, we conclude that the Coalition has standing to pursue the relief it
seeks.

 We turn now to the Coalition's contention that the district court erroneously
construed section 2(g) of the Act to exempt entire buildings in which religious rituals are held as
well as all attached buildings. Section 2(g) provides that the Act does not apply to "a place used
primarily for religious rituals within either a building or facility of a religious organization." See
Tex. Rev. Civ. Stat. Ann. art. 9102, § 2(g). The Coalition argues that this language clearly and
unambiguously exempts a discrete area inside a religious building or facility but not other areas
that provide access to the building or facility. The Coalition therefore asserts that it was improper
for the district court to defer to the Department's construction to the contrary. The Department
contends that the language of section 2(g) is ambiguous and that the district court was correct to
defer to the Department's construction, which the Department argues was reasonable.

 Statutory construction is a question of law. See Johnson v. City of Fort Worth, 774
S.W.2d 653, 656 (Tex. 1989). Our objective when we construe a statute is to determine and give
effect to the legislature's intent. See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966
S.W.2d 482, 484 (Tex. 1998); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex.
1994). The resolution of an issue of statutory construction must begin with an analysis of the
statute. See Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983). If the disputed
statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate and
the statute should be given its common meaning. See St. Luke's Episcopal Hosp. v. Agbor, 952
S.W.2d 503, 505 (Tex. 1997). The legislature's intent is determined from the plain and common
meaning of the words used. See id. (citing Monsanto Co. v. Cornerstones Mun. Util. Dist., 865
S.W.2d 937, 939 (Tex. 1993)).

 When the legislature has failed to define a specific word in a statute, courts apply
its ordinary meaning. See Monsanto Co., 865 S.W.2d at 939. Courts may not by implication
enlarge the meaning of any word in the statute beyond its ordinary meaning. See Sorokolit v.
Rhodes, 889 S.W.2d 239, 241 (Tex. 1994); Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d
129, 138 (Tex. App.--Austin 1986, writ ref'd n.r.e.). Likewise, a court is not free to formulate
forced or strained definitions for statutory terms. See Blair v. Razis, 926 S.W.2d 784, 787 (Tex.
App.--Tyler 1996, no writ). The court must presume that every word in a statute has been used
for a purpose and that every word excluded was excluded for a purpose. See Southwestern Bell
Tel. Co. v. Public Util. Comm'n, 888 S.W.2d 921, 926 (Tex. App.--Austin 1994, writ denied)
(citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)).

 The scope of section 2(g) largely depends upon the meaning of two words--"place"
and "ritual." A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. See Teleprofits of Tex., Inc. v. Sharp, 875
S.W.2d 748, 750 (Tex. App.--Austin 1994, no writ) (citing 2A Norman J. Singer, Sutherland
Statutory Construction § 45.02, at 6 (5th ed. 1992)). Therefore, the Coalition's argument that
section 2(g) is clear and unambiguous reduces to an assertion that the words "place" and "ritual,"
interpreted together in the context of the disputed statute, can reasonably have only one meaning.

 As there is no definition of either word in section 2(g), we apply their common and
ordinary meanings. See Sharp v. F.W. Gartner Co., 971 S.W.2d 707, 709 (Tex. App.--Austin
1998, no pet.); see also Tex. Gov't Code Ann. § 312.002(a) (West 1998). Of the word "place,"
Black's Law Dictionary states, "This word is a very indefinite term. It is applied to any locality,
limited by boundaries, however large or however small . . . . In its primary and most general
sense means locality, situation, or site, and it is also used to designate an occupied situation or
building." Black's Law Dictionary 1148 (6th ed. 1990). Likewise, Webster's Dictionary defines
"place" in a number of ways, the most applicable to this case being: "a building or locality used
for a special purpose." Webster's Third New International Dictionary 1727 (Philip B. Gove ed.,
1961). "Ritual" is defined in Webster's Dictionary as "the forms of conducting a devotional
service especially as established by tradition or by sacerdotal prescription" or "a code or system
of rites." Id. at 1961.

 We reject the Coalition's argument that the language of section 2(g) is so clear and
unambiguous that we may not rely on standard rules of statutory construction to interpret its
meaning. Both "place" and "ritual" are subject to at least two reasonable interpretations. In the
context of the statute, it is unclear whether "ritual" refers in a narrow sense to religious rites
performed by a limited number of participants or in a more general sense to the devotional service
experienced by an entire congregation. Because the word "ritual" is subject to different
interpretations, reasonable persons could define the boundaries of the "place" used primarily for
religious rituals in conflicting ways. The ambiguity inherent in both words obscures the statute's
overall meaning and permits reasonable persons to arrive at different interpretations; thus, we may
rely on standard rules of statutory construction to determine whether the district court properly
deferred to the Department's interpretation. See Texas Water Comm'n v. Brushy Creek Mun. Util.
Dist., 917 S.W.2d 19, 21 (Tex. 1996) (citing Ex parte Roloff, 510 S.W.2d 913, 915 (Tex. 1974)).

 The fundamental rule controlling the construction of a statute is to ascertain, if
possible, the intent of the legislature as expressed in the language of that statute. See Liberty Mut.
Ins. Co., 966 S.W.2d at 484. Extrinsic aids to construction include an examination of the entire
statute or act and a consideration of the purpose and intent of the law. See State v. Terrell, 588
S.W.2d 784, 786 (Tex. 1979); Texas Citrus Exch. v. Sharp, 955 S.W.2d 164, 168 (Tex.
App.--Austin 1997, no pet.). Additionally, Texas courts give serious consideration to an agency's
interpretation of an ambiguous statute that it is charged with enforcing, especially when the agency
has special expertise in the area, so long as that interpretation is reasonable. See Tarrant
Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993); Texas Utils. Elec. Co. v. Sharp,
962 S.W.2d 723, 726 (Tex. App.--Austin 1998, pet. denied); Meno v. Kitchens, 873 S.W.2d 789,
791 (Tex. App.--Austin 1994, writ denied). A statute's legislative history may also be helpful in
divining the legislature's intent. See Liberty Mut. Ins. Co., 966 S.W.2d at 484.

 Applying these rules to section 2(g), however, leads us to conclude that the
legislature did not intend the statute to exempt entire religious buildings and facilities, as well as
all attached buildings, from the requirements of the Act. Section 2(g) is susceptible to at least two
reasonable interpretations. For example, the statute can be reasonably read to exempt either the
entire area dedicated to the devotional service within a religious building or facility, including the
space in which the congregation gathers, or the more discrete area within the place of worship
where religious rites are performed, such as the altar, baptismal font, or choir loft. Either
interpretation is reasonable given the indefinite nature of the words used.

 The Department's interpretation of section 2(g) extends the reach of the exemption
to encompass the entire building or facility in which a religious ritual is held and all attached
buildings. This interpretation ignores the statute's edicts that the "place" exempted be used
"primarily" for religious rituals and that it be located "within" a religious building or facility. 
The summary judgment proof indicates that the Department has exempted all newly constructed
or substantially renovated religious buildings or facilities entirely from compliance with the Act,
without regard to whether religious rituals occur within the buildings or facilities. For example,
exemptions have been granted for newly constructed youth classrooms, education buildings,
fellowship halls, and activity centers, none of which are places used primarily for religious rituals. 
The Department's interpretation is contrary to the words of the statute, and thus, we are not bound
by it. See Citizens Nat'l Bank v. Calvert, 527 S.W.2d 175, 180 (Tex. 1975); Calhoun County
Indep. Sch. Dist. v. Meno, 902 S.W.2d 748, 752 (Tex. App.--Austin 1995, writ denied).

 The Department's reading of section 2(g) is also out of harmony with the rest of
the statute. Section 2(g)'s exemption must be read in light of the overall purpose of the Act,
which is "to eliminate, insofar as possible, unnecessary barriers encountered by persons with
disabilities." Tex. Rev. Civ. Stat. Ann. art. 9102, § 1. Specifically, the Act is intended to make
all buildings and facilities covered by its provisions "accessible to, and functional for, persons
with disabilities." See id. § 3(b). The Department's expansive interpretation of section 2(g)
unnecessarily restricts the access of disabled persons to the religious buildings and facilities of
their choice. A more narrow interpretation that confines the areas exempted in a reasonable
manner commensurate with the language of the statute would be more consistent with the Act's
goal of limiting the barriers encountered by disabled persons. See City of Plano v. Public Util.
Comm'n, 953 S.W.2d 416, 421 (Tex. App.--Austin 1997, no pet.).

 Finally, there is some indication that the legislature considered and rejected a
version of section 2(g) that would have unambiguously provided for the expansive exemption
implemented by the Department. When the words of a statute are subject to two reasonable
constructions and are therefore ambiguous, we may look to the legislative history of the bill to see
which meaning the legislature intended the words to have. See San Antonio Gen. Drivers v.
Thornton, 299 S.W.2d 911, 914 (Tex. 1957). The intent of an individual legislator, even the
statute's principal author, is not legislative history controlling the construction to be given a
statute. See General Chem. Corp. v. De La Lastra, 852 S.W.2d 916, 923 (Tex. 1993).

 House Bill 1612, as originally proposed, provided: "The standards adopted under
this article do not apply to a building or facility of a religious organization or an entity controlled
by a religious organization, including a place of worship." The bill was later amended to read: 


The standards adopted under this article do not apply to a building or facility that
is used primarily as a place of religious worship or for religious education
purposes. For the purposes of this subsection, a building or facility used primarily
for religious education purposes does not include a private or parochial school.


A third revision struck the preceding language and provided: "The standards adopted under this
article do not apply to a place used primarily for religious rituals within a building or facility of
a religious organization." Following a fourth, non-substantive change, the bill was sent to the
governor and signed into law.

 The legislative history of section 2(g) indicates that the scope of the exemption was
narrowed considerably as the bill made its way through the legislative process. House Bill 1612,
as originally introduced in the legislature, exempted all buildings or facilities of a religious
organization from the requirements of the Act. The House of Representatives then amended the
bill to add the requirement that the building or facility exempted be used primarily as a place of
religious worship or for religious education purposes. Finally, the bill was revised to further limit
the exemption to places used primarily for religious rituals within a building or facility of a
religious organization. Applying the various principles of statutory construction that we have
discussed, we are persuaded that the evolution of the statute bolsters the conclusion that its
refinement was intended to narrow its reach.

 The Department's interpretation of section 2(g) is consistent with language that was
discarded by the legislature rather than language that was signed into law. The deletion of a
provision in a pending bill discloses the legislative intent to reject the proposal. See
Transportation Ins. Co. v. Maksyn, 580 S.W.2d 334, 337-38 (Tex. 1979). We have no right to
give the bill a meaning that does not comport with that intent. See id.; see also San Antonio Gen.
Drivers, 299 S.W.2d at 914-15.

 Having reviewed the language of section 2(g), its legislative history, and the overall
purpose of the Act, we conclude that the legislature did not intend section 2(g) to shield entire
religious buildings or facilities, as well as all attached buildings, from the requirements of the Act. 
Therefore, the district court erred in granting summary judgment in favor of the Department. We
reverse the summary judgment and render judgment that the Department's interpretation of section
2(g) is unreasonable. We remand the cause to the district court for further proceedings not
inconsistent with this opinion.

 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: October 14, 1999

Do Not Publish
1. The Texas Department of Licensing and Regulation is the primary state agency
responsible for oversight of businesses, industries, general trades, and occupations regulated by
this state as assigned to the Department by the legislature. See Tex. Rev. Civ. Stat. Ann. art.
9100, § 2(a) (West Supp. 1999). The Department is governed by the Texas Commission of
Licensing and Regulation, which is composed of six members appointed by the governor. See id.
§§ 2(b), 3(a). The Commission is responsible for appointing an executive director for the
Department, whose title is commissioner of licensing and regulation. See id. § 13(a). The
commissioner at the time the lawsuit was filed was Tommy Smith. Rachelle Martin is Smith's
successor in office.
2. See Tex. Rev. Civ. Stat. Ann. art. 9102 (West Supp. 1999).
3. See 42 U.S.C. § 12181 (1994).



ection, a building or facility used primarily
for religious education purposes does not include a private or parochial school.


A third revision struck the preceding language and provided: "The standards adopted under this
article do not apply to a place used primarily for religious rituals within a building or facility of
a religious organization." Following a fourth, non-substantive change, the bill was sent to the
governor and signed into law.

 The legislative history of section 2(g) indicates that the scope of the exemption was
narrowed considerably as the bill made its way through the legislative process. House Bill 1612,
as originally introduced in the legislature, exempted all buildings or facilities of a religious
organization from the requirements of the Act. The House of Representatives then amended the
bill to add the requirement that the building or facility exempted be used primarily as a place of
religious worship or for religious education purposes. Finally, the bill was revised to further limit
the exemption to places used primarily for religious rituals within a building or facility of a
religious organization. Applying the various principles of statutory construction that we have
discussed, we are persuaded that the evolution of the statute bolsters the conclusion that its
refinement was intended to narrow its reach.

 The Department's interpretation of section 2(g) is consistent with language that was
discarded by the legislature rather than language that was signed into law. The deletion of a
provision in a pending bill discloses the legislative intent to reject the proposal. See
Transportation Ins. Co. v. Maksyn, 58