ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

February 16, 2005

The Honorable Will Hartnett
Chair, Committee on Judiciary
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0304

Re: Whether a municipality may grant a tax abatement under the Property Redevelopment and Tax Abatement Act for business personal property newly added to a site where previously existing personal property was subject to a ten-year tax abatement agreement  (RQ-0261-GA)

Dear Representative Hartnett:

You ask about a municipality's authority to grant a tax abatement for business personal property newly added to a site where previously existing personal property was subject to a ten-year tax abatement agreement.[1]

The Property Redevelopment and Tax Abatement Act (the "Act"), chapter 312 of the Tax Code, authorizes the governing body of a municipality to grant a property tax abatement by executing an agreement limited in duration to ten years. *See* TEX. TAX CODE ANN. §§ 312.001 (Vernon 2002) (short title of chapter 312 of the Tax Code), 312.204(a) (Vernon Supp. 2004-05) (limiting agreements to exempt a portion of property value from taxation to a period not to exceed ten years). Based in part on the ten-year limitation in section 312.204(a), this office concluded in Attorney General Opinion JC-0133 that a "governmental entity [such as a municipality] may not grant a tax abatement for property that previously received a ten-year tax abatement" under chapter 312. *See* Tex. Att'y Gen. Op. No. JC-0133 (1999) at 6. You understand the opinion as pertaining only to real property and ask whether new business personal property should be treated differently even though it is placed on real property where other personal property had previously received an abatement under the Act. Specifically, you ask:

>    1.    Do Section 312.204(a) of the Act and JC-0133 prohibit a city from granting tax abatements for newly added business personal property if there was an earlier ten-year tax abatement at that site on previously existing personal property?

---

[1]*See* Letter from Honorable Will Hartnett, Chair, Committee on Judiciary, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General (Aug. 23, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

2.  Can a city provide incentives to a manufacturing facility investing within an existing site for the expansion, replacement, or installation of new, separately defined personal property if the manufacturer received a prior, ten-year tangible personal property tax abatement at that site?

3.  Would such a tax abatement for new business personal property be disallowed at the site because of the prior tax abatement at the site on entirely different business personal property?

Request Letter, *supra* note 1, at 1-2.

Before we review the basis for the opinion in JC-0133, we must consider the Act's language. The goal in statutory construction is to determine and give effect to the legislature's intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We begin by considering the plain and common meaning of the statute's words. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). If unambiguous, a statute will generally be construed as written. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). However, legislative intent must be derived from an examination of an act as a whole, not just isolated portions. *Id.* Additionally, the objective of a law, its legislative history, and the consequences of a particular construction may be considered for its insight into legislative intent. *See* TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (Vernon 1998); *McIntyre*, 109 S.W.3d at 745.

Generally, all real property and tangible personal property taxed in the state must be taxed in proportion to its value. *See* TEX. CONST. art. VIII, § 1-b. Article VIII, section 1-g(a) of the Texas Constitution was adopted, however, to permit cities, towns, or other taxing units, as the legislature may authorize, to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone "for the purpose of development or redevelopment and improvement of the property." *Id.* § 1-g(a). Chapter 312 was enacted as enabling legislation for article VIII, section 1-g(a). *See* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 5, § 9, 1981 Tex. Gen. Laws 53, 57 (making the Act effective on the constitutional amendment's adoption date); *see also* Tex. Att'y Gen. Op. No. GA-0134 (2004) at 3.[2]

Subchapter A of chapter 312 contains tax abatement provisions applicable to taxing units generally. TEX. TAX CODE ANN. §§ 312.001-.006 (Vernon 2002 & Supp. 2004-05). A taxing unit such as a municipality wishing to grant an abatement under the chapter must adopt a resolution stating that the taxing unit elects to become eligible to participate in tax abatement. *Id.* § 312.002(a) (Vernon Supp. 2004-05). The taxing unit must also establish "guidelines and criteria" for tax abatement agreements. *Id.* The guidelines and criteria must make abatement available both for creating new facilities and structures and for expanding or modernizing existing facilities and structures. *Id.* Once adopted, the guidelines and criteria are generally effective for two years. *Id.* § 312.002(c).

---

[2]Section 312.006 provides for chapter 312 to expire if not continued in effect. The section was amended twice in 2001, one act providing for an expiration date of September 1, 2005, *see* Act of May 24, 2001, 77th Leg., R.S., ch. 1505, § 5, 2001 Tex. Gen. Laws 5362, 5373, the other providing for expiration on September 1, 2009, *see* Act of May 25, 2001, 77th Leg., R.S., ch. 1029, § 1, 2001 Tex. Gen. Laws 2278, 2278.

Subchapter B specifically concerns tax abatements in municipal reinvestment zones. *Id.* §§ 312.201-.211 (Vernon 2002 & Supp. 2004-05) (subchapter B, entitled "Tax Abatement in Municipal Reinvestment Zone"). A municipal governing body may promulgate an ordinance designating an area in the municipality's taxing jurisdiction or extraterritorial jurisdiction as a reinvestment zone if the municipal governing body finds that the area satisfies section 312.202's requirements. *Id.* § 312.201(a) (Vernon 2002). Section 312.202 specifies criteria for designating an area as a reinvestment zone. An area may be designated as a reinvestment zone if it is subject to certain conditions that "substantially arrest or impair the sound growth of the municipality creating the zone, retard the provision of housing accommodations, or constitute an economic or social liability and [are] a menace to the public health, safety, morals, or welfare in its present condition and use."[3] Also, areas in or immediately adjacent to an area or community receiving or qualifying for certain federal assistance may be designated as a reinvestment zone. *Id.* § 312.202(3)-(4). An area encompassing outdoor advertising structures slated for relocation, reconstruction, or removal may meet the criteria for a municipal reinvestment zone. *Id.* § 312.202(5). Finally, section 312.202 allows designating an area as a municipal reinvestment zone if it is:

> reasonably likely as a result of the designation to contribute to the retention or expansion of primary employment or to attract major investment in the zone that would be a benefit to the property and that would contribute to the economic development of the municipality.

*Id.* § 312.202(6).

---

[3]The specific detrimental conditions are:

> (A) a substantial number of substandard, slum, deteriorated, or deteriorating structures;
>
> (B) the predominance of defective or inadequate sidewalks or streets;
>
> (C) faulty size, adequacy, accessibility, or usefulness of lots;
>
> (D) unsanitary or unsafe conditions;
>
> (E) the deterioration of site or other improvements;
>
> (F) tax or special assessment delinquency exceeding the fair value of the land;
>
> (G) defective or unusual conditions of title;
>
> (H) conditions that endanger life or property by fire or other cause; or
>
> (I) any combination of these factors[.]

TEX. TAX CODE ANN. § 312.202(1)(A)-(I) (Vernon 2002). Additionally, an area may be designated as a reinvestment zone if it is: "predominantly open and, because of obsolete platting, deterioration of structures or site improvements, or other factors, substantially impair[s] or arrest[s] the sound growth of the municipality." *Id.* § 312.202(2).

A governing body may designate a reinvestment zone only after giving notice and conducting a public hearing on the designation and after finding "that the improvements sought are feasible and practical and would be a benefit to the land to be included in the zone and to the municipality after the expiration of an agreement entered into under Section 312.204." *Id.* § 312.201(a), (d). The designation is made by an ordinance describing the zone's boundaries and its eligibility for residential or commercial-industrial tax abatement (or for tax increment financing under chapter 311 of the Tax Code). *Id.* § 312.201(b). The designation expires after five years, and "may be renewed for periods not to exceed five years." *Id.* § 312.203.

Once a municipality has properly adopted a resolution electing to be eligible to grant abatements, established guidelines and criteria, and designated an area as a reinvestment zone, the governing body may then execute written tax abatement agreements with owners of taxable real property or certain leasehold interests located in the reinvestment zone. *See id.* §§ 312.002, .204(a)-(g) (Vernon 2002 & Supp. 2004-05).[4] The municipal governing body must "find[] that the terms of the agreement and the property subject to the agreement meet the applicable guidelines and criteria adopted by the governing body." *Id.* § 312.002(b) (Vernon 2002); *see also id.* § 312.204(a) (Vernon Supp. 2004-05) (authorizing municipalities eligible under section 312.002 to enter into a tax abatement agreement). The agreement may grant a tax abatement only "on the condition that the owner of the property make specific improvements or repairs to the property." *Id.* § 312.204(a) (Vernon Supp. 2004-05). The agreement must, among other things, list the proposed improvements, authorize the municipality to inspect the property to ensure that the improvements or repairs are made as agreed, limit the property to uses consistent with the general purpose of encouraging development or redevelopment of the zone, and require the property owner to certify annually to the governing body of each taxing unit that the owner is in compliance with the agreement. *Id.* § 312.205(a)(1)-(3), (6) (Vernon 2002). *See also* Tex. Att'y Gen. Op. No. JC-0106 (1999) at 5 ("not only must the subject of a tax abatement agreement be an improvement or repair in the ordinary sense, it must also serve the economic development purposes of the reinvestment zone, and benefit the public as well as the property owner").

An eligible municipality may agree to exempt from taxation a portion of the value of the real property or of tangible personal property located on the real property, or both, for a period not to exceed ten years. *Id.* § 312.204(a) (Vernon Supp. 2004-05). An agreement may exempt a portion of real property value to the extent that in future years it exceeds its value for the year in which the agreement is executed. *Id.* With respect to personal property:

---

[4]The principal requirements of a municipal tax abatement agreement are specified in section 312.204(a), which was amended by three different acts in 2001. See Act of May 22, 2001, 77th Leg., R.S., ch. 560, § 1, 2001 Tex. Gen. Laws 1077 (House Bill 3001); Act of May 23, 2001, 77th Leg., R.S., ch. 640, § 1, 2001 Tex. Gen. Laws 1205, 1206 (House Bill 1448); Act of May 27, 2001, 77th Leg., R.S., ch. 1258, § 1, 2001 Tex. Gen. Laws 2984, 2985 (Senate Bill 985). Under the Code Construction Act, we must attempt to harmonize and give effect to all three amendments. TEX. GOV'T CODE ANN. § 311.025(b) (Vernon 1998). In doing so, we are not to construe the reenactment of statutory text, as required by article III, section 36 of the Texas Constitution, "to be irreconcilable with additions or omissions in the same text made by another amendment." *Id.* § 311.025(c). Should the amendments prove to be irreconcilable, the latest enactment will prevail. *Id.* § 311.025(b).

Applying these rules, we conclude that the amendments, as they pertain to the issues presented here, may be harmonized and given effect as described in the above accompanying text.

> An agreement exempting taxable personal property located on taxable
> or tax-exempt real property may provide for the exemption of
> tangible personal property located on the real property in each year
> covered by the agreement other than tangible personal property that
> was located on the real property at any time before the period covered
> by the agreement with the municipality . . . .

*Id.*

The parties may modify a chapter 312, subchapter B tax abatement agreement by following the same procedures they used to approve and execute the original agreement. *Id.* § 312.208(a) (Vernon 2002). They may not, however, modify the original agreement to extend beyond ten years from the date of the original agreement. *Id.*

You ask whether the execution of a tax abatement agreement concerning specific personal property disqualifies the real property owner from executing another abatement agreement concerning different personal property to be located at the same site. In Attorney General Opinion JC-0133, a city's abatement agreement with a property owner concerned "permanently affixed improvements to real property in the reinvestment zone." *See* Letter from Honorable Sonya Letson, Potter County Attorney, to Honorable John Cornyn, Texas Attorney General (June 10, 1999) (RQ-0077-JC) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us). One of the questions posed in the request was "Can a subsequent tax abatement be given on property that has already been the subject of a tax abatement for the ten-year period designated in Tax Code § 312.204?" *Id.* at 2. This office rejected a construction of the statute that "would allow ten-year agreements to be entered into one after the other, potentially resulting in taxes being abated on a piece of property for an unlimited length of time." Tex. Att'y Gen. Op. No. JC-0133 (1999) at 2. The opinion observed that the Act's ultimate goal is to increase the tax base, and discerned "no purpose for the ten-year limit other than to make certain that the property is returned to the tax rolls. Allowing successive ten-year agreements *on the same property* would defeat this purpose." *Id.* at 3 (emphasis added) (citing *Calhoun County Indep. Sch. Dist. v. Meno*, 902 S.W.2d 748, 749 (Tex. App.–Austin 1995, writ denied) for its description of the Act as "increasing the local tax base in the long run and decreasing tax revenue only in the short run"). The opinion determined that a change of property ownership would not change the answer, because it "could result in successive abatement agreements *on the same piece of property*," and would have "the potential of forestalling indefinitely the return of property to the tax rolls." *Id.* (emphasis added). In the opinion's summary, this office concluded that a "governmental entity may not grant a tax abatement *for property that previously received* a ten-year tax abatement." *Id.* at 6 (emphasis added).

Thus, Attorney General Opinion JC-0133 did not interpret the Act to allow a municipality to grant only one abatement per location. Rather, this office determined that the purpose of the Act, as manifested in the ten-year limit on abatement agreements in section 312.204(a), would not permit a construction that allowed the taxes on the same property to be abated in successive agreements, thereby abating the taxes on the property indefinitely. Whether a municipality could agree to abate the taxes on different property was not considered.

The Act does not expressly or implicitly suggest that once a municipality has granted a property owner a tax abatement for improving property or expanding its facilities, the municipality cannot induce an owner to make further improvements or expansions by abating the taxes on the new property or improvements. The Act establishes a tax exemption, and tax exemptions are to be strictly construed. *See N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). However, the rule of strict construction does not warrant unreasonably interpreting an exemption so as to deny its plain effect. *Sharp v. F.W. Gartner Co.*, 971 S.W.2d 707, 709 (Tex. App.–Austin 1998, no pet.); Tex. Att'y Gen. Op. No. JC-0372 (2001) at 3 (rule of strict construction "should not be employed to construe a tax exemption provision contrary to its plain meaning"). Courts will not "write special exceptions into a statute so as to make it inapplicable under certain circumstances not mentioned in the statute." *Pub. Util. Comm'n v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex. 1999) (rejecting construction that would "judicially amend the statute to add an exception not implicitly contained in the language of the statute").

Abatement agreements are authorized not only for creating new facilities, but also "for the expansion or modernization of existing facilities and structures." TEX. TAX CODE ANN. § 312.002(a) (Vernon Supp. 2004-05). Section 312.204(a) authorizes an eligible municipality to "exempt from taxation a portion of the value of the real property or of tangible personal property located on the real property, or both." *Id.* § 312.204(a). That section further specifies that the agreement may exempt a portion of the value of personal property located on real property within the reinvestment zone, other than personal property "that was located on the real property at any time before the period covered by the agreement with the municipality." *Id.* We conclude that a prior tax abatement agreement under chapter 312 of the Tax Code concerning specific property does not preclude a municipality from agreeing to abate taxes on different personal property at the same location. Rather, chapter 312 specifically authorizes an eligible municipality to enter into an abatement agreement that fully complies with chapter 312 requirements. Of course, whether a municipality is eligible to enter into tax abatement agreements and whether chapter 312 authorizes a particular agreement depends on currently applicable circumstances. *See, e.g., id.* §§ 312.002(b)-(c) (governing body may not enter into an abatement agreement unless the agreement's terms and the subject property meet applicable guidelines and criteria; guidelines and criteria are effective for two years); 312.201(d) (Vernon 2002) (designation of reinvestment zone requires governing body to find that improvements sought would be a benefit "to the municipality after the expiration of an agreement entered into under Section 312.204"); 312.203 (designation of reinvestment zone expires after five years and may be renewed for periods not to exceed five years); 312.204(a) (Vernon Supp. 2004-05) (governing body of eligible municipality may enter into tax abatement agreement on condition that owner make specific improvements or repairs to the property). *See also McCormick Marketing, Inc. v. City of Colorado City*, 42 S.W.3d 162, 164-65 (Tex. App.–Eastland 2001, no pet.) (city council that voted for tax abatement but did not formally designate a reinvestment zone and execute an abatement agreement in compliance with the Act lacked authority to grant tax abatement).

### S U M M A R Y

Under the Property Redevelopment and Tax Abatement Act, chapter 312 of the Tax Code, a prior tax abatement agreement concerning specific property does not preclude a municipality from agreeing to abate taxes on different business personal property at the same location. A new abatement agreement must fully comply with chapter 312 requirements.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee