**John SHARP, Comptroller of Public Accounts for the State of Texas, and Dan Morales, Attorney General of the State of Texas, Appellants,**

v.

**F.W. GARTNER COMPANY, Appellee.**

**No. 03–97–00576–CV.**

Court of Appeals of Texas, Austin.

June 18, 1998.

---

**708**

William E. Storie, Esteban H. Rodriguez, Asst. Attys. Gen., Taxation Division, Austin, for appellant.

Ray Langenberg, Scott, Douglass & McConnico, L.L.P., Austin, for appellee.

Before YEAKEL, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

Appellants, John Sharp, Comptroller of Public Accounts of the State of Texas, and Dan Morales, Attorney General of the State of Texas ("Comptroller"), appeal the trial court's grant of summary judgment to appellee, F.W. Gartner Company ("Gartner"). Gartner brought suit against the Comptroller, seeking a refund of motor fuel taxes it paid on gasoline and diesel used as fuel for construction equipment.[1] Both Gartner and the Comptroller moved for summary judgment. The trial court granted Gartner's motion, denied the Comptroller's motion, and ordered a refund to Gartner in the amount of $10,984.50 plus interest. The Comptroller now appeals the denial of its motion and the granting of Gartner's summary judgment motion. In two points of error, the Comptroller argues that Gartner's summary judgment motion should not have been granted because Gartner is not eligible for the tax refund, and, even if it is eligible, Gartner's summary judgment proof does not establish that it is entitled to the refund. We will affirm.

## THE CONTROVERSY

Gartner rents gasoline and diesel powered construction equipment, such as welders, tractor loaders, paving breakers, and air compressors. This equipment is rented full of fuel. Gartner's customers may return the equipment full or reimburse Gartner for refueling the equipment. Gartner charges customers who choose the reimbursement option approximately $1.75 per gallon of fuel and refuels the rental equipment from its own bulk storage facilities. In replenishing its bulk storage facilities, Gartner pays around $.95 per gallon of gasoline and $.75 per gallon of diesel, which includes the $.15 or $.20 tax for each gallon of gasoline and diesel.

The Texas Tax Code ("Code") authorizes refunds of taxes paid on gasoline and diesel used for purposes other than operation upon a public highway. *See* Tex. Tax Code Ann. §§ 153.119(a), .222(a) (West Supp.1998). Gartner sought a tax refund on the fuel it used to refuel its rental equipment and that its customers consumed for off-highway purposes. The Comptroller denied Gartner's application because it interprets the Code as

---

1. Gartner seeks tax refunds for both gasoline and diesel fuel. Gasoline and diesel are governed by separate subchapters of the Motor Fuel Taxes section of the Texas Tax Code. *See* Tex. Tax Code Ann. §§ 153.001–.505 (West 1992 & Supp.1998). However, for convenience, we will refer to these terms collectively as "fuel."

requiring the person applying for the tax refund to have actually *consumed* the fuel. Since Gartner merely sold the fuel to its customers, who were the actual consumers, the Comptroller argues Gartner is not entitled to the refund. The Comptroller argues that Gartner is statutorily obligated to collect the tax from the customers, who must pay the tax and apply for the refund. To the contrary, Gartner contends that it is entitled to apply for the refund because it paid the tax on the fuel and used the fuel for a purpose other than propelling a motor vehicle upon the highway. Further, Gartner avers that there is no statutory requirement that the person requesting the refund must be the off-road consumer of the fuel.

## STANDARD OF REVIEW

The standards for reviewing a summary judgment are well established. The movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true and every reasonable inference indulged in favor of the nonmovant, with any doubts resolved in the nonmovant's favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When, as here, both parties move for summary judgment, the non-prevailing party may appeal both the prevailing party's motion as well as its own. *See Holmes v. Morales,* 924 S.W.2d 920, 922 (Tex.1996); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The appellate court should determine all questions presented. *Jones,* 745 S.W.2d at 900.

## DISCUSSION

■ In its first point of error, the Comptroller argues that Gartner is not entitled to summary judgment because Gartner has not used the fuel in an exempt manner. The issue before us is whether Gartner can apply for a tax refund for the fuel it used to service its rental equipment but which the customers actually consumed for an off-highway purpose. To answer this question, we must look to the Code. The primary rule of

statutory interpretation requires that a court look to the intent of the legislature and construe the statute so as to give effect to the intent. *See Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). When determining legislative intent, the courts may look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions. *Id.* Tax exemptions are not favored by the law and are subject to strict construction. *See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.,* 804 S.W.2d 894, 899 (Tex.1991). The rule of strict construction, however, cannot be used as an excuse to stray from reasonableness. *See Sharp v. Tyler Pipe Indus., Inc.,* 919 S.W.2d 157, 161 (Tex.App.—Austin 1996, writ denied). The burden of proof is on the claimant to clearly show that it comes within the statutory exemption. *See Bullock v. National Bancshares Corp.,* 584 S.W.2d 268, 272 (Tex.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 667 (1980).

The Code provides in relevant part:

A person who … *uses* gasoline for the purpose of operating or propelling a motorboat, tractor used for agricultural purposes, or stationary engine, or *for another purpose* except in a vehicle operated or intended to be operated on the public highways of this state, and who has paid the tax imposed on gasoline by this chapter either directly or indirectly is … *entitled to reimbursement of the tax paid by him* . . . .

Tax.Code § 153.119(a) (West Supp.1998) (emphasis added).

[A] user who has paid the tax on any diesel fuel that has been *used* by him for a purpose other than propelling a motor vehicle on the public highways … may file a claim for a refund of taxes paid. . . .

Tax Code § 153.222(a) (West Supp.1998) (emphasis added).

■ The Comptroller's primary argument is that the term "use" in the tax refund provisions means "consume." As there is no definition of the term "use" in the Code, we will apply its common and ordinary meaning. *See* Tex. Gov't Code Ann. § 311.011(a) (West 1988); *State v. Public Util. Comm'n,* 883

S.W.2d 190, 200 (Tex.1994). The definition of "use" includes: "to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of." *See Black's Law Dictionary* 1541 (6th ed.1990). Unlike the Comptroller's position, the definition implies that "use" has a broader meaning than "consume." Further, the Code itself does not support the Comptroller's interpretation of the term. Section 153.105(a) states in part that "the amount of the tax shall be added to the selling price so that the tax is paid ultimately by the person *using* or *consuming* the gasoline." Tax Code § 153.105(a) (West 1992). If the legislature intended for "use" to mean only "consume," there would have been no need to include both terms in this provision. As we are to presume that the legislature has not done a useless act, we are further persuaded that the legislature did not intend to limit "use" to "consume." *See Webb County Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex.1990); *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex.1981).

In addition, under the Comptroller's reading of the Code, neither Gartner nor its customers would be entitled to apply for the refund. Gartner would be barred because it does not consume the fuel. The customers, however, also would be barred because they would not be consuming the fuel they purchased. In the present situation, customers rent the equipment full of fuel and have the option of refueling it themselves or returning it empty and reimbursing Gartner for refueling it. The customers, therefore, are purchasing replacement fuel, and the next customer who rents the equipment will actually consume that fuel. While we are to strictly construe tax exemptions, we must do so reasonably. *See Tyler Pipe Indus.*, 919 S.W.2d at 161. We should not give such a strict construction that would essentially eliminate the exemption. We reject the Comptroller's argument that the person applying for the refund must actually consume the fuel.

■ The Comptroller further argues that, because Gartner sells fuel to the customers who return the equipment empty, Gartner cannot also have used the fuel.

Without citing authority, the Comptroller maintains that "sale" and "use" are mutually exclusive terms. We disagree. A person who uses fuel for a purpose other than propelling a motor vehicle on the highway is entitled to the tax refund. We do not find that such a "use" necessarily excludes sale. Furthermore, provisions in the Code support Gartner's contention that it used the fuel for a purpose other than propelling a motor vehicle on the highway by delivering it to the tanks of the construction equipment. For example, "bulk user" is defined as "a person who owns or leases a bulk storage tank from which gasoline or diesel fuel is delivered into the fuel supply tanks of a motor vehicle or other equipment owned or operated by the person." Tax Code § 153.001(2) (West Supp. 1998). "User" means "a person who owns or operates a motor vehicle having fuel supply tanks into which gasoline or diesel fuel is delivered." Tax Code § 153.001(27) (West Supp.1998). Moreover, the legislature expressly provided that "[g]asoline is deemed to be used when it is delivered into a fuel supply tank" and "[d]iesel fuel is deemed to be used when it is delivered into fuel supply tanks." *See* Tax Code §§ 153.105(b), .206(e) (West 1992). While the Comptroller is correct in its contention that these provisions do not directly apply to Gartner's situation, we must consider the entire act in determining whether Gartner used the fuel within the meaning of Code. *See Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991); *Sayre v. Mullins*, 681 S.W.2d 25, 27–28 (Tex. 1984). We hold that Gartner used the fuel for a purpose other than propelling a motor vehicle on the highway.

■ Next, the Comptroller argues that Gartner is statutorily required to collect the tax from the customers because Gartner is selling fuel to its customers. The Code sections which pertain to collection of fuel taxes, however, do not support the Comptroller's position. Section 153.105(a) provides:

(a) A person who makes a sale or use of gasoline *on which the tax has not been previously paid in this state* ... shall at the time of sale or use collect the tax from the purchaser or recipient of gasoline ...

and is also liable to the state for the taxes collected.

Tax Code § 153.105(a) (West 1992) (emphasis added). The phrase "on which the tax has not been previously paid" implies that a person who has previously paid the tax does not have to collect it from the purchaser or recipient of the fuel. In the absence of language barring Gartner from paying the tax itself, we cannot say that Gartner is statutorily obligated to collect the gasoline tax from the customers. Similarly, we find nothing to prevent Gartner from paying the tax on the diesel fuel and applying for the refund. *See* Tax Code § 153.206 (West 1992 & Supp. 1998). We overrule the Comptroller's first point of error.

In its second point of error, the Comptroller asserts that Gartner's summary judgment proof fails to establish that Gartner did not charge the tax to the customers. Gartner attached an invoice to its summary judgment motion as proof that it did not charge its customers the tax. The invoice has separate lines for fuel and tax amounts. The tax line is blank, indicating that Gartner did not charge tax on the transaction to the customer. To negate Gartner's summary judgment proof, the Comptroller asks us to infer, based solely on the price Gartner charges for refueling, that Gartner collected the tax from its customers. As we do not find this to be a reasonable inference, we decline. The Comptroller's second point of error is overruled.

## CONCLUSION

Having overruled the Comptroller's first and second points of error, we affirm the summary judgment in favor of Gartner.