John CORNYN, Attorney General of the State of Texas, and Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas, in their Official Capacities as Representatives of the State of Texas, Appellants,

v.

UNIVERSE LIFE INSURANCE COMPANY, Appellee.

No. 03–98–00110–CV.

Court of Appeals of Texas, Austin.

March 11, 1999.

Rehearing Overruled April 15, 1999.

John Cornyn, Attorney General, William E. Storie, Assistant Attorney General, Austin, for Appellant.

Larry Parks, Long, Burner, Parks & Sealy, P.C., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices JONES and YEAKEL.

LEE YEAKEL, Justice.

This is an appeal of a summary judgment in an insurance premium tax refund dispute.[1] Appellee Universe Life Insurance Company ("Universe Life") sought a credit against its Texas gross premiums tax for examination fees it paid to other states as part of a joint examination in which the State of Texas participated. The Comptroller of Public Accounts, appellant, denied the request. Universe Life paid the tax, penalty and interest and sought *de novo* review of the Comptroller's determination. *See* Tex. Tax Code Ann. §§ 112.052(a), .054 (West 1992 & Supp.1999).[2] The district court ordered the credit in favor of Universe Life. We will affirm in part, and reverse and remand in part.

**Background and Procedural History**

In April 1993, the Texas Department of Insurance (the "Department") initiated a market conduct examination of Universe Life, an Idaho life and health insurance company. At the invitation of the Department, examiners from Idaho, Montana and Nevada participated in the multistate examination. The purpose of the examination was to review the company's practices in advertising, policy statements and claims handling. By statute, the cost of the examination by the

---

1. This appeal was originally filed in the names of the predecessors to the present Attorney General and Comptroller. We have substituted the current holders of those offices as the correct parties to this proceeding. *See* Tex.R.App. P. 7.2(a).

2. The Tax Code required that Universe Life sue both the Comptroller and the Attorney General. *See* Tex. Tax Code Ann. § 112.053(a) (West Supp. 1999). The interests of the Comptroller and the Attorney General do not diverge in this case. For convenience we will refer to both collectively as "the Comptroller."

Texas examiners is borne by the insurance company. Tex. Ins.Code Ann. art. 1.16(f) (West Supp.1999)[3] ("Insurance Code"). In turn, the insurance company receives as a credit against its gross premiums tax the "amount of all examination and valuation fees paid during each tax year to or for the use of the State of Texas. . . ." *Id.* at art. 4.11, § 8 ("section 8").[4]

As a result of the multistate examination, the Texas examiners charged Universe Life $17,377.61. Universe Life paid the charges and received a credit in that amount against its Texas gross premiums tax. Universe Life sought an additional $39,074.17 credit for the costs charged by Idaho and Nevada for their participation in the examination.[5] The Comptroller denied Universe Life's request for a credit for the amounts paid to the other states. Universe Life paid the tax, penalty and interest and instituted this lawsuit. *See* Tex. Tax Code Ann. §§ 112.052(a), .054 (West 1992 & Supp.1999).

Both parties moved for summary judgment. The district court denied the Comptroller's motion and granted summary judgment in favor of Universe Life ordering a dollar-for-dollar credit against Universe Life's gross premiums tax for the other states' fees, including penalty and interest. The Comptroller presents a single issue on appeal: does section 8 allow an insurance company to claim a dollar-for-dollar tax credit against its gross premiums tax for examination fees paid to other states?

### Standard of Review

■ When both parties move for summary judgment and the trial court grants one and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented. *Commissioners*

*Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). We must review the record to determine whether either party proved the absence of issues of material fact and is entitled to judgment as a matter of law. *Sharp v. Morton Bldgs., Inc.,* 953 S.W.2d 300, 302 (Tex. App.—Austin 1997, writ denied). In deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, every inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *see S & H Mktg. Group, Inc. v. Sharp,* 951 S.W.2d 265, 266 (Tex.App.—Austin 1997, no writ). The reviewing court should render such judgment as the trial court should have rendered. *Agan,* 940 S.W.2d at 81.

### Discussion

The Comptroller argues that the fees paid to other states are not fees "for the use of" the State of Texas, and therefore the trial court erred in granting summary judgment in favor of Universe Life. We must determine whether other states' examination fees qualify for the credit in section 8, and if so, the method for calculating the credit.

### *Plain Meaning of Section 8*

■ We are bound by well-settled rules of statutory construction. First and foremost, we are required to follow the plain meaning of a statute. *Meno v. Kitchens,* 873 S.W.2d 789, 792 (Tex.App.—Austin 1994, writ denied). If the language of the statute is unambiguous, then the court must seek the legislative intent as found in the plain and common meaning of the words and terms used. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939

---

3. Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 1, 1951 Tex. Gen. Laws 868, 873, *amended by* Act of May 30, 1983, 68th Leg., R.S., ch. 622, § 16, 1983 Tex. Gen. Laws 3891, 3912–13 (codified in Tex. Ins.Code Ann. art. 1.16(f) (West Supp.1999)). Because the provision has not materially changed, we will cite to the current version unless otherwise indicated.

4. Act of July 3, 1984, 68th Leg., 2d C.S., ch. 31, art. 4, 1984 Tex. Gen. Laws 215, 217, *amended*

*by* Act of May 9, 1985, 69th Leg., R.S., ch. 161, § 4, 1985 Tex. Gen. Laws 715, 716 (codified in Tex. Ins.Code Ann. art. 4.11, § 8 (West Supp. 1999)). Because the provision has not materially changed, we will cite to the current version unless otherwise indicated.

5. Universe Life did not seek to obtain the amount of the Montana examination fees as a credit against its Texas gross premiums tax.

(Tex.1993). In applying the plain and common meaning of the language, a court may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when intent may be gathered from a reasonable interpretation of the statute as it is written. *Sorokolit*, 889 S.W.2d at 241. The court must presume that every word in a statute has been used for a purpose and that every word excluded was excluded for a purpose. *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 888 S.W.2d 921, 926 (Tex. App.—Austin 1994, writ denied) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981)).

■ The plain-meaning rule is subject to only narrow exceptions: the interpretation must not lead to foolish or absurd results or attribute to the legislature an intention to work an injustice. *Kitchens*, 873 S.W.2d at 792. The mere fact that a policy seems unwise or inconsistent with other policies does not justify a departure from the plain meaning of the legislative mandate. *Id.; see Railroad Comm'n v. Miller*, 434 S.W.2d 670, 672 (Tex.1968).

■ In its entirety, section 8 provides:

The amount of all examination and valuation fees paid during each tax year to or for the use of the State of Texas by an insurance carrier shall be allowed as a tax credit on the amount of premium taxes due under this article except as provided by Article 1.28 of this code. Any credit allowed by the provisions of this section is in addition to any other credits allowable by statute.

Insurance Code art. 4.11, § 8.

The Comptroller argues that fees paid to other states are not "paid ... for the use of the State of Texas within the ordinary meaning of the word 'use,'" which the Comptroller contends means to exercise control or power over a thing. Because the Comptroller does not exercise control or power over the fees paid to other states, the Comptroller argues that those fees are not "for the use of" the State of Texas.

We disagree with the Comptroller's interpretation of the term "use." As there is no definition of the term "use" in article 4.11, we apply its common and ordinary meaning. *See Sharp v. F.W. Gartner Co.*, 971 S.W.2d 707, 709 (Tex.App.—Austin 1998, no pet.); *see* Tex. Gov't Code Ann. § 311.011(a) (West 1998). The supreme court has defined "use" as meaning to convert to one's own service, to put to a purpose, to hold, occupy, enjoy or take the benefit of. *Big H Auto Auction Inc. v. Saenz Motors*, 665 S.W.2d 756, 758 (Tex. 1984) (emphasis added); *see also* Black's Law Dictionary 1542 (6th ed.1990) (in the non-technical sense, "use" means to enjoy, hold, occupy or have some manner of benefit thereof).

According to our reading, the meaning of section 8 is clear and unambiguous. The plain language of section 8 demonstrates that the legislature intended to create two categories of examination fees to be a credit against an insurance company's gross premiums tax: (1) fees paid *to* the State of Texas; and (2) fees paid *for the use of* the State of Texas. The first category covers fees paid by an insurance company directly to the State of Texas. The second category covers fees paid by an insurance company to some other entity, besides the State of Texas, the payment of which benefits the State of Texas.

The fees in this case fall within the second category. Universe Life paid fees to Idaho and Nevada which covered the cost of those states' examinations. As the summary-judgment proof indicates, those states' examiners shared information with the Texas examiners. The Comptroller acknowledges that "for the use of" includes fees paid to outside accountants or actuaries who are engaged at the request of the Department to perform part of an examination,[6] because the State

---

6. The summary-judgment proof includes the deposition testimony of Thomas J. Malone, a senior systems analyst for the Comptroller:

Q: Is that the position of the Comptroller of Public Accounts, that if it wasn't paid to Texas, then my client doesn't get credit for it?

A: Or for the use of Texas, meaning that if it was paid to a state agency of Texas or paid directly on behalf of a request by the examiner for an outside actuarial firm or accounting firm to do part of the work.

benefits by receiving information provided by the outside accountants or actuaries. Here, the Texas examiner received information from the Idaho and Nevada examiners which was used by the Department in the scope, planning, supervision, conduct, and performance of the examination. The examiners had similar interests in many of the same subject areas. The examiners discussed among themselves findings made during the course of the examination. A Nevada examiner provided the Texas examiner with his memorandum concerning advertising materials. The Texas examiners' depositions reflect that they knew of no prohibition against using information provided by other states. The Department does not dispute that it used information provided by the other states.

The Comptroller's interpretation of the term "use" is too narrow. As we have stated, and as the Comptroller apparently agrees, the phrase "for the use of" contemplates fees paid to a private entity, the payment of which benefits the State. The Comptroller would apply the "for the use of" phrase only to accountants and actuaries that the Department directs to perform part or all of an audit. Given the legislature's provision for joint examinations, see Insurance Code article 1.15, section 1, and the Comptroller's recognition that the State may benefit by the payment of fees to third parties, we conclude that the plain meaning of section 8 includes fees paid to other states.

▉ The Comptroller also argues that this Court is bound by her interpretation of section 8. We disagree. This Court may give weight to the construction placed upon a statute by the agency charged with its administration as long as the construction is reasonable and does not contradict the plain language of the statute. *Quorum Sales, Inc. v. Sharp*, 910 S.W.2d 59, 62 (Tex.App.—Aus-

tin 1995, writ denied) (citing *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993)). As stated earlier, we find section 8 to be clear and unambiguous. We conclude that the Comptroller interprets the term "use" too narrowly, and in contrast to the plain language of section 8. We further conclude, in light of the plain language of section 8, that the Comptroller's interpretation is not reasonable.

### Related Statutory Provisions on Examinations—Impact on Plain Meaning

In her second argument, the Comptroller contends that because the legislative scheme allows her to determine and control the specifics about an examination—when an examination is necessary, who will conduct it, what the examiners' compensation will be and the cost of the examination [7]—it is inconsistent to allow other states to control the amount and character of fees paid for the use of the State of Texas by allowing an insurance carrier a credit for other states' fees. We note at the outset, the Comptroller's argument is undermined by the summary-judgment evidence which indicates the Department relinquished some of its control over the examination by extending the scope of the examination from one to three years at the request of another state. Moreover, the Nevada examiner acted as the "examiner-in-charge" during the majority of the examination.

▉ The issue here is not a question of control; rather, it is a question of the Texas examiners' benefitting, in the form of shared information, from the payment of fees by Universe Life to other states. The Insurance Code provides that Texas examiners may participate in joint examinations.[8] The legislature has recognized that Texas may participate in joint examinations and necessarily benefit from other states' involvement.

---

7. *See* Tex. Ins.Code Ann. arts. 1.15, 1.16 & 1.17 (West 1981 & Supp.1999).

8. Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 1, 1951 Tex. Gen. Laws 868, 872, *amended by* Act of July 16, 1987, 70th Leg., 2d C.S., ch. 67, § 6, 1987 Tex. Gen. Laws 207, 210 (codified in Tex. Ins.Code Ann. art. 1.15, § 1 (West Supp. 1999)). Article 1.15 provides in pertinent part that the Board

shall similarly, in person or by one or more commissioned examiners, visit and examine, either alone or jointly with representatives of the insurance supervising departments of other states, each insurance carrier not organized under the laws of this state but authorized to transact business in this state.

Tex. Ins.Code Ann. art. 1.15, § 1 (West Supp. 1999).

While we recognize that construction of a statute may not be done in isolation from the rest of the statute, and that the act must be considered as a whole and not by interpreting a single sentence or phrase, *Southwestern Bell*, 888 S.W.2d at 926 (citing *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985)), we conclude that the other provisions cited by the Comptroller do not change the plain meaning of section 8.

We conclude that the district court correctly determined that the fees paid by Universe Life to other states qualify for a credit against Universe Life's Texas gross premiums tax as provided by section 8.

### Calculation of the Credit Based on Fees Paid "For the Use of Texas"

 Having concluded that the fees paid to other states are subject to the credit provision of section 8, we now address the Comptroller's argument that if the credit is allowed, it should be calculated pro rata, determined by the cost of the information provided by other states and used by the State of Texas.

According to the plain language of section 8, to qualify for the credit the fees must be paid either to the State of Texas, or to some other entity "for the use of" Texas. The Comptroller points out that another state's entire examination fee may not be "for the use" of Texas, and therefore, the credit should be prorated as it relates to fees paid to other states. Universe Life urges us to affirm the district court's award of a dollar-for-dollar credit.

Universe Life relies upon Attorney General Opinion No. V–967 (1949) which involved article 7604a,[9] a taxation provision that applied only to life insurance companies. Opinion No. V–967 addressed whether domestic insurance companies other than life, writing health and accident policies, were entitled to an examination fee credit; and, if so, whether the entire examination fee was allowed as a deduction, or whether there must be an allo-

cation of the expense of the examination of the health and accident portion from other portions of the company's lines of insurance. The Attorney General opined that domestic insurance companies writing health and accident insurance clearly come within the terms of article 7604a, and that a company did not have to prorate the credit since the "Legislature did not make any provision relative to prorating the credit."

Opinion No. V–967 does not address the question before this Court. The question there related to the need to pro rate the examination fees of one company among its different lines of coverage. This does not address the issue in this case—whether the phrase "for the use of" requires a pro rata calculation. We agree with the Comptroller's argument that another state's examination may generate some information that is not relevant or useful to an examination by Texas auditors. Moreover, the plain meaning of "for the use of" indicates that the credit must be calculated pro rata based on the fees paid to other entities which are used by the State.

Accordingly, we conclude that an insurance company must demonstrate what amount of the examination and valuation fees paid to other entities is "for the use of" the State of Texas. To the extent such fees paid to other entities are "for the use of" Texas, and to the extent the insurance company has not otherwise received reimbursement from another source, the fees qualify for the fee credit in section 8.[10]

### Conclusion

We affirm the district court judgment insofar as it concludes that the fees paid to other entities qualify under the "for the use of" credit in section 8. We reverse the judgment insofar as it found a dollar-for-dollar credit, and remand this cause to the district court for a determination of the pro rata credit amount, based on the dollar figure represent-

---

9. Act of June 30, 1949, 51st Leg., R.S., ch. 620, § 1, 1949 Tex. Gen. Laws 1365 (current version at Tex. Ins.Code Ann. art. 4.11 (West Supp. 1999)). Section 8 is derived from a portion of article 7604a.

10. Although we hold that the credit is calculated on a pro rata basis, such holding does not foreclose an insurance carrier from proving that an *entire* examination fee paid to another entity is "for the use of" Texas.

ing fees paid to other states "for the use of" the State of Texas, which have not otherwise been reimbursed from another source.