Affirmed and Opinion filed May 10, 2005









Affirmed and Opinion filed May 10, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00908-CV

____________

 

EDWARD F. GROUP,
III, D.C.,
Appellant

 

V.

 

MARK VICENTO, Appellee

 



 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 04-01393

 



 

O P I N I O N

In this medical malpractice case,
appellant appeals the trial court=s denial of his
motion to dismiss challenging the sufficiency of the appellee=s expert
report.  In a single issue, appellant
argues the trial court erred in denying his motion to dismiss as a matter of
law because the appellee=s expert is not qualified to render an
opinion regarding the chiropractic standard of care under Chapter 74 of the
Texas Civil Practice and Remedies Code. 
We affirm.








Factual and
Procedural Background

Appellee Mark Vicento, a police officer,
was injured in an automobile accident in September 2001.  Vicento immediately sought treatment for his
injuries at a chiropractic clinic. 
Appellant Edward F. Group, III, D.C., a chiropractor, treated Vicento=s injuries.  In November 2001, Group referred Vicento for
an MRI (magnetic resonance imaging) of the lumbar spine.  Group continued to treat Vicento over the
next year.  In 2003, Vicento underwent
back surgery.  

Vicento contends Group should have
referred him to an expert spine surgeon for specialized treatment upon
reviewing his MRI results in November 2001,[1]
and Group=s failure to do so delayed Vicento=s eventual surgery
for approximately one year, exacerbating his injuries.  Vicento filed this medical malpractice
lawsuit against Group in January 2004, alleging claims of medical negligence.  Specifically, Vicento claims Group Awas negligent in
failing to comply with the standard of care by failing to timely and adequately
(i) test, (ii) assess, (iii) diagnose, (iv) treat, and (v) refer [Vicento] to a
specialist when his condition worsened and deteriorated.@  Vicento asserts Group should have known his
condition was such that he needed a specialist for treatment, and he contends
Group=s negligent acts
and omissions delayed his spine surgery for a period of approximately two
years, thereby aggravating his condition.








Vicento timely filed the expert report of
Rezik Saqer, M.D., pursuant to Texas Civil Practice and Remedies Code section
74.351.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351 (Vernon
2005).  In response, Group filed a motion
to dismiss Vicento=s case on the ground that Dr. Saqer=s expert report
did not comply with section 74.351 of the Texas Civil Practice and Remedies
Code.  Group alleged in his motion to
dismiss that Dr. Saqer was not qualified to opine on the chiropractic standard
of care and Dr. Saqer=s expert report was inadequate.  Group requested the trial court to order
Vicento to cure the deficiency within 30 days or dismiss Vicento=s cause of
action.  The trial court ordered Vicento
to file a report complying with the statute within thirty days.  

Vicento timely filed an amended expert
report by Dr. Saqer.  Group responded by
filing a motion re-urging his prior motion to dismiss, arguing the amended
expert report is deficient because (1) Dr. Saqer is not qualified to render an
opinion on the chiropractic standard of care because he does not fit the
statutory definition of Apracticing health care@ and is not
qualified Aon the basis of  training and experience@ as these terms
are defined by section 74.402 of the Texas Civil Practice and Remedies Code,
(2) Dr. Saqer=s report does not state how Group deviated
from the chiropractic standard of care, and (3) Dr. Saqer=s report fails to
comply with section 74.403 in failing to state how Group=s actions caused
any injury to Vicento. 

The trial court denied Group=s second motion to
dismiss.  Group filed this interlocutory
appeal from the trial court=s order.[2]

Discussion

A.      Standard
of Review

We review a trial court=s decision on a
motion to dismiss a case under Texas Civil Practice and Remedies Code section
74.351 for an abuse of discretion.  See
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875
(Tex. 2001) (holding trial court=s decision to
dismiss a case under former article 4590i, section 13.01(e) (predecessor to
Texas Civil Practice and Remedies Code section 74.351) is reviewed for an abuse
of discretion).








B.      Expert
Reports and Texas Civil Practice and Remedies Code Section 74.351

In 2003, the Texas Legislature enacted
significant changes in the expert report requirement for medical malpractice
cases.  See Tex. Civ. Prac. & Rem. Code Ann. '' 74.001B.507 (Vernon 2005)
(effective September 1, 2003, formerly article 4590i of the Texas Revised Civil
Statutes, the Medical Liability and Insurance Improvement Act).  Section 74.351 of the Texas Civil Practice
and Remedies Code requires a plaintiff who files a Ahealth care
liability claim@ to file an expert report within 120 days
of filing its claim:

(a)     In
a health care liability claim, a claimant shall, not later than the 120th day after
the date the claim was filed, serve on each party or the party=s attorney one or
more expert reports, with a curriculum vitae of each expert listed in the
report for each physician or health care provider against whom a liability
claim is asserted.  The date for serving
the report may be extended by written agreement of the affected parties.  Each defendant physician or health care
provider whose conduct is implicated in a report must file and serve any
objection to the sufficiency of the report not later than the 21st day after
the date it was served, failing which all objections are waived.      

Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(a).  A Ahealth care
liability claim@ is defined as Aa cause of action against
a health care provider or physician for treatment, lack of treatment, or
other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related to
health care, which proximately results in injury to or death of a claimant,
whether the claimant=s claim or cause of action sounds in tort
or contract.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.001(13)
(Vernon 2005) (emphasis added). 
Chiropractors fall under the definition of a Ahealth care
provider.@  Tex. Civ. Prac. & Rem. Code Ann. '
74.001(12)(A)(v).  

Under section 74.351(l), A[a] court shall
grant a motion challenging the adequacy of an expert report only it if appears
to the court, after hearing, that the report does not represent an objective
good faith effort to comply with the definition of an expert report . . . .@  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(l).  An Aexpert report@ is defined as:








[A] written report
by an expert that provides a fair summary of the expert=s opinions as of
the date of the report regarding applicable standards of care, the manner in
which the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.

Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(r)(6).  

C.      Qualifications
of an Expert Witness in a Suit Against a Health Care Provider and Texas
Civil Practice and Remedies Code Section 74.402

An expert providing opinion testimony
about how a Ahealth care provider,@ such as
chiropractor Group, departed from accepted standards of health care must be
qualified to testify under the requirements of section 74.402.  See Tex.
Civ. Prac. & Rem. Code Ann. '
74.351(r)(5)(B).  Section 74.402(b) lists
three specific qualifications an expert witness must possess in order to
provide opinion testimony on how a health care provider departed from accepted
standards of health care:

(b)     In a suit involving a health care liability
claim against a health care provider, a person may qualify as an expert witness
on the issue of whether the health care provider departed from accepted
standards of care only if the person:

(1)     is practicing health care in a field
of practice that involves the same type of care or treatment as that delivered
by the defendant health care provider, if the defendant health care provider is
an individual, at the time the testimony is given or was practicing that type
of health care at the time the claim arose;

(2)     has knowledge of accepted standards of care
for health care providers for the diagnosis, care, or treatment of the illness,
injury, or condition involved in the claim; 
and

(3)     is qualified on the basis of training or
experience to offer an expert opinion regarding those accepted standards of
health care.

Tex. Civ. Prac. & Rem.
Code Ann. ' 74.402 (b) (Vernon 2005) (emphasis
added).  The above emphasized terms are
specifically defined in subsections (a) and (c) of section 74.402.  APracticing health
care@ is defined as including:

(1)     training health care providers in the
same field as the defendant health care provider at an accredited
educational institution; or 








(2)     serving as a consulting health care provider
and being licensed, certified, or registered in the same field as the
defendant health care provider.

Tex. Civ. Prac. & Rem.
Code Ann. ' 74.402(a)(1), (2) (emphasis added).  To determine whether an expert Ais qualified on
the basis of training or experience@ under subsection
(b)(3), a court is to consider whether the expert:

(1)     is certified by a licensing agency of one
or more states of the United States or a national professional certifying
agency, or has other substantial training or experience, in the area of health
care relevant to the claim;  and

(2)     is
actively practicing health care in rendering health care services
relevant to the claim.

Tex. Civ. Prac. & Rem.
Code Ann. ' 74.402(c)(1), (2) (emphasis added).  

Section 74.402(d) provides a court Ashall apply@ the criteria
specified in section 74.402 (a)B(c) in determining
whether an expert is qualified to offer expert testimony on the issue of
whether a defendant health care provider departed from accepted standards of
health care.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.402(d).  A court may depart from the criteria if,
under the circumstances, there is good reason to admit the expert=s testimony, but
if the court departs from the criteria, the court shall state on the record the
reason for admitting the testimony.  Id.  Here, the trial court=s order denying
Group=s motion to
dismiss does not state the court departed from section 74.402=s criteria.

In contrast to an expert who provides
opinion testimony about how a health care provider departed from accepted
standards of health care, an expert who provides opinion testimony about the causal
relationship between the injury, harm, or damages claimed and the alleged
departure from the applicable standard of care in a health care liability claim
must be a physician who is otherwise qualified to render opinions on
such a causal relationship under the Texas Rules of Evidence.  See
Tex. Civ. Prac. & Rem. Code Ann. '' 74.351(r)(5)(C),
74.403(a) (Vernon 2005). 

This is a case of first impression under
newly enacted section 74.402.  

 








D.      Group=s Motion to
Dismiss

Group argues the trial court erred in
denying his motion to dismiss because Dr. Saqer is not qualified to render an
expert opinion regarding the chiropractic standard of care.  Group=s challenges to
Dr. Saqer=s qualifications focus on section 74.402,
subsections (a), (b)(1), (3) and (c)(2).[3]  First, Group asserts Dr. Saqer is not
statutorily qualified to render an opinion regarding the chiropractic standard
of care or a breach thereof because he is not Apracticing health
care@ as defined by
section 74.402(a).  Group contends
section 74.402(a) requires Dr. Saqer to be (1) practicing health care in a
field of practice involving the same type of care or treatment as Group, the
field of chiropractic, (2) licensed as a chiropractor,  or (3) teaching chiropractic at an accredited
chiropractic school.  Second, Group
argues Dr. Saqer is not qualified Aon the basis of
training or experience@ under section 73.402(b)(3) because he is
not a chiropractor and is not actively Apracticing health
care@ in the field of
chiropractic.  

In response, Vicento asserts the trial
court=s denial of Group=s motion to
dismiss was proper because Dr. Saqer=s expert report
demonstrates he has the requisite knowledge, skill, experience, training, and education
regarding the treatment of patients with conditions similar to Vicento=s to qualify him
as an expert as to the standard of care and causation in this case.  Vicento contends Dr. Saqer=s report
establishes he practices health care in a field that involves the same type of
care and treatment as that delivered by Group, and he has expertise in the
particular areas involved in this case. 
Vicento further asserts section 74.402 does not require an expert
in a suit against a chiropractor to be a chiropractor in order to be
qualified to opine on the standard of care.[4]








1.       Rules
of Statutory Construction

Statutory construction is a question of
law, and we review a trial court=s interpretation
of a statute under a de novo standard of review.  Tex. Dep=t of Transp. v.
Needham, 82 S.W.3d 314, 318 (Tex. 2002). 
When interpreting statutes, our primary objective
is to ascertain and give effect to legislative intent.  Fitzgerald v. Advanced Spine Fixation
Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999); see Tex. Gov=t Code Ann. ' 311.023 (Vernon 2005).  We look first to the plain and common meaning
of the language of the statute.  Fitzgerald,
996 S.W.2d at 865; see Tex. Gov=t Code Ann. ' 311.011 (Vernon
2005).  We must read the statute as a
whole and not just isolated portions.  Tex.
Dep=t. of Transp. v. City of Sunset Valley, 146 S.W.3d 637,
642  (Tex. 2004).  If the meaning of the statutory language is
unambiguous, we must interpret it according to its terms, giving meaning to the
language consistent with other provisions in the statute.  Id. 
We read every word as if it were deliberately chosen and presume that
omitted words were excluded purposefully. 
See Cornyn v. Universe Life Ins. Co., 988 S.W.2d 376, 378B79 (Tex. App.CAustin 1999, pet.
denied).  We also consider the objective
the law seeks to obtain and the consequences of a particular construction.  Sunset Valley, 146 S.W.3d at 642. 

We apply the above principles in
construing section 74.402, and we examine Dr. Saqer=s qualifications
in light of section 74.402=s
requirements.  

2.       Section
74.402(a) and (b)(1):  APracticing Health
Care@








First, under section 74.402(b)(1), to
qualify as an expert witness on the issue of whether Group departed from
accepted standards of care, Dr. Saqer must be Apracticing health
care in a field of practice that involves the same type of care or treatment as
that delivered by the defendant health care provider, if the defendant health
care provider is an individual, at the time the testimony is given or was
practicing that type of health care at the time the claim arose.@  Tex.
Civ. Prac. & Rem. Code Ann. '
74.402(b)(1).  

Group argues the term Apracticing health
care@ as defined by
subsection (a) requires a qualified expert in a chiropractic malpractice
case to either be a chiropractor, train chiropractors at an accredited
educational institution, or serve as a consulting health care provider to
chiropractors and be licensed, certified, or registered as a chiropractor.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.402(a)(1), (2)
(AFor purposes of
[section 74.402], >practicing health care= includes:
(1) training health care providers in the same field as the defendant health
care provider at an accredited educational institution; or (2) serving as a consulting
health care provider and being licensed, certified, or registered in the same
field as the defendant health care provider.@) (emphasis
added).  Group contends Dr. Saqer does
not meet the statutory definition of Apracticing health
care.@  In response, Vicento argues Dr. Saqer=s report
demonstrates he has adequate knowledge, skill, experience, training, and
education regarding his treatment of patients with conditions similar to
Vicento=s to qualify him
as an expert under subsection (b)(1).

Group=s asserted
construction of section 74.402, subsections (a)(1)B(2) and (b)(1),
improperly limits and confines the definition of the term Apracticing health
care.@  Subsection (a) uses the term Aincludes@ in defining Apracticing health
care.@  Although Chapter 74 does not define the term Aincludes,@ the Code
Construction Act defines Aincludes@ as a term Aof enlargement and
not of limitation or exclusive enumeration, and use of [includes] does not
create a presumption that components not expressed are excluded.@  Tex.
Gov=t Code Ann. ' 311.005(13) (Vernon 2005); see Jackson
Law Office, P.C. v. Chappell, 37 S.W.3d 15, 25B26 (Tex. App.CTyler 2000, pet.
denied).  Thus, section 74.402(a)=s two definitions
of Apracticing health
care@ are not
exclusive.  








In addition, under the literal language of
section 74.402(b)(1), an expert is only required to be Apracticing health
care in a field of practice that involves the same type of care or treatment
as that delivered by the defendant health care provider.@   See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.402(b)(1)
(emphasis added).  Subsection (b)(1) does
not require an expert to be practicing health care in the same field as
the defendant health care provider, here, the field of chiropractic.  Instead, under subsection (b)(1), the expert
only must practice health care in a field of practice involving the same
type of care or treatment.[5]


 Reading section 74.402 subsections (a) and
(b)(1) together, subsection (a) expands upon the definition of Apracticing health
care@ to include
qualified teachers and consulting health care providers who may not otherwise
be qualified under subsection (b)(1) because they are not practicing
health care and instead teach or consult. Group=s proffered
construction of subsection (a) and (b)(1) results in a person being qualified
as an expert only if the person trains health care providers in the
same field as the defendant health care provider or if the person
serves as a consulting health care provider and is licensed, certified, or
registered in the same field as the defendant health care provider.  According to Group, if a person practices
health care in a field of practice that involves the same type of care or
treatment as that delivered by the defendant health care provider, but the
person is not certified in the same field of practice as the defendant health
care provider, is not a teacher, or is not a qualified consultant, the person
is unqualified.  

Group=s asserted
construction of section 74.402(a) is unnecessarily restrictive and is contrary
to the plain and common meaning of the language of the statute.  Having considered the language of section
74.402 in its entirety, we disagree with Group that the two definitions of Apracticing health
care@ under section
74.402(a) are exclusive. 








3.       Dr.
Saqer=s Qualifications and Section 74.402

a.       Section
74.402(b)(1)

We now analyze whether Dr. Saqer satisfies
the requirements of section 74.402(b)(1). 
Dr. Saqer=s expert report and curriculum vitae
reveal he is a licensed medical doctor, an anesthesiologist, who specializes in
anesthesia and pain management.  He has
been practicing anesthesia and pain management in the Houston area for the past
seven years.  Dr. Saqer is the owner and
president of Houston Preferred Anesthesia, a group of anesthesiologists that
provide anesthesia services to different hospitals and outpatient surgery
centers.  He is board eligible by the
American Board of Anesthesiologists and a Board Diplomat by the American
Academy of Pain Management.  He also is
the founder and manager of Texas Pain Solutions, which provides invasive and
non-invasive pain services through different hospitals and multiple clinics in
the Houston area.

Although Dr. Saqer does not train
chiropractors at an accredited educational institution, does not serve as a
consulting health care provider to chiropractors, and is not licensed,
certified, or registered as a chiropractor,[6]
as discussed above, this is not determinative of Dr. Saqer=s qualifications
under subsection (b)(1).  Rather, the
focus of our inquiry is whether Dr. Saqer practices health care in a field of
practice that involves the same type of care or treatment as that delivered by
Group.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.402(b)(1).

In his report, Dr. Saqer states the
following with regard to his qualifications:








As a practicing medical doctor
specializing in anesthesia and pain management, I know the accepted standard of
care required of chiropractors practicing under the same or similar
circumstances as was Chiropractor Edward F. Group during the past seven
years.  As a pain specialist, I treat
patients with all types of pain, including be [sic] related to work, motor
vehicle accident, arthritis, cancer pain, or post-surgical pain.  I treat on average more than 100 patients
every week, and more than 20% of them suffer from conditions similar to Mr.
Vicento.  I know the accepted standard of
care required of chiropractors regarding the type of injury and treatment involved
in this case, because my specialty overlaps and intertwines with chiropractic
practice.  Specifically, I engage in
modalities of treatment, which include but are not limited to pain management
modalities.  These areas include but are
not limited to the following:

1.       Massage Therapy;

2.       Oscillation of pain centers;

3.       Relief of complications of muscle spasms;

4.       Neurological pain causation;

5.       Accupuncture treatment;

6.       Modern methods of physical therapy.

These are the same areas that
chiropractors use to manipulate and treat patients.  For example, massage therapy includes, but is
not limited to: [i] increasing circulation to promote healing, [ii] relieving
cramps and muscle spasm, [iii] pain relief of spinal injuries and headaches by
decreasing muscle tension, [iv] manipulating limbs and the spine to relieve
impingement of nerve roots and other complications from injuries, and [v]
manipulation of the body to increase mobility due to the effects of
degenerative disc disease and the aging process.  These treatments are utilized by
chiropractors and pain management physicians alike.

Additionally, chiropractors and
pain management physicians use similar methods to evaluate patients and
determine whether to refer them to a specialist for surgical consultation.   For example, during massage therapy, I often
become aware of other additional needs in connection with pain management.  Some of the methodology indicates an absence
of pain in certain manipulations of the human body which further delineates the
nature and extent of the injury.  By
performing pain management methods, either by way of injection, manipulation,
or massage, I am able to further isolate the cause of the injury and then
concentrate on alleviation of the pain by non-surgically treating the area of
the injury which is causing the pain in the arm and the hand or by referring
for surgical intervention, if needed.








A chiropractor, though he cannot do
or perform injections, utilizes similar methodology in making determinations as
to the cause of pain.  It is . . . during
that determination/diagnostic period that a chiropractor should become aware of
the need to send that patient for further and additional medical care and
treatment that is more sophisticated than he either legally or ethically can
perform.

I am qualified to do and perform many of the same things
that chiropractors are competent to do and perform, but my level of expertise,
by reason of my training, experience and education, enables me to perform a
magnitude of other procedures that chiropractors cannot use.  As a pain management physician I work closely
together with chiropractors; I have supervised chiropractors, evaluated
patients of chiropractors, been assisted by chiropractors and taught
chiropractors modern pain relief methodology. 
It is by reason of this overlapping area between chiropractic measures
and pain management areas that I am qualified to testify regarding chiropractic
procedures.  Specifically, because
determining when to refer a patient for neurosurgical consultation is common to
both pain management and chiropractic, I am qualified to testify as to the
standard of care for referral of a patient to a specialized spine surgeon.

We conclude, based on the foregoing, Dr.
Saqer is Apracticing health care@ in a field of
practice that involves the same type of care or treatment as chiropractor
Group.  Accordingly, Dr. Saqer satisfies
section 74.402(b)(1)=s requirements.

b.       Section
74.402(b)(2)

Under section 74.402(b)(2), Dr. Saqer must
have Aknowledge of
accepted standards of care for health care providers for the diagnosis, care,
or treatment of the illness, injury, or condition involved in the claim.@  Tex.
Civ. Prac. & Rem. Code Ann. '
74.402(b)(2).  On appeal, Group does not
specifically argue Dr. Saqer does not satisfy subsection (b)(2).  Dr. Saqer explains in his report he has
knowledge of the accepted standards of care for chiropractors for the
diagnosis, care, and treatment of the type of injury involved in this
claim.  Thus, Dr. Saqer satisfies section
74.402(b)(2). 

c.       Section
74.402(b)(3)








Finally, we examine whether Dr. Saqer
satisfies the third requirement set forth in section 74.402(b)(3), that he be Aqualified on the
basis of training or experience to offer an expert opinion regarding . . .
accepted standards of health care.@  See Tex.
Civ. Prac. & Rem. Code Ann. '
74.402(b)(3).  To determine whether an
expert is qualified Aon the basis of training or experience,@ subsection (c) of
the statute instructs courts to consider whether the expert A(1) is certified
by a licensing agency of one or more states of the United States or a national
professional certifying agency, or has other substantial training or experience
in the area of health care relevant to the claim; and (2) is actively practicing
health care in rendering health care services relevant to the claim.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.402(c)(1)B(2) (emphasis
added).

Dr. Saqer states in his report that he has
experience in the area of chiropractic, his Aspecialty overlaps
and intertwines with chiropractic practice,@ and 20% of his
patients suffer from injuries similar to Mr. Vicento=s.  In addition, Dr. Saqer states he is a
licensed physician practicing anesthesiology and pain management.  Dr. Saqer satisfies subsection (c)(1).  

With regard to subsection (c)(2), Group
argues Dr. Saqer does not satisfy this subsection because he is not Apracticing health
care.@  See Tex.
Civ. Prac. & Rem. Code Ann. '
74.402(c)(2).  Subsection(c)(2) inquires
whether the person Ais actively practicing health care in
rendering health care services relevant to the claim.@  Id. 
As discussed above with regard to subsection (b)(1), Dr. Saqer=s expert report shows
he is actively practicing health care services relevant to Vicento=s claim.  Thus, he satisfies subsection (c)(2).

Having concluded Dr. Saqer satisfies both
prongs of subsection (c), he, therefore, is qualified on the basis of training
or experience under subsection (b)(3) to offer an expert opinion regarding
accepted chiropractic standards of care. 

CONCLUSION

Dr. Saqer satisfies the requirements of
section 74.402(b)(1)B(3). 
Accordingly, we hold the trial court did not abuse its discretion in
denying Group=s motion to dismiss Vicento=s expert report
and overrule appellant=s sole issue.  

 

 








We affirm the trial court=s order denying
appellant=s motion to dismiss.

 

 

 

/s/      John S. Anderson

Justice

 

Judgment
rendered and Opinion filed May 10, 2005.

 

Panel
consists of Justices Anderson, Hudson, and Frost.

 

 

 











[1]  The MRI report
showed herniated lumbar discs with significant spine and foramen stenosis at
four different lumbar spine levels.  





[2]  Texas Civil
Practice and Remedies Code section 51.014 permits an interlocutory appeal to be
filed from an order of a district court that denies all or part of the relief
sought by a motion under section 74.351(b) of the Texas Civil Practice and
Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(9) (Vernon Supp. 2005).  Group=s motion
to dismiss sought relief under section 73.351(b) and alleged Vicento=s expert report was deficient.  See Tex.
Civ. Prac. & Rem. Code Ann. '
74.351(b).  Section 74.351(b) permits a
trial court to award a defendant health care provider reasonable attorney=s fees and costs and to dismiss a plaintiff=s claims if an expert report is not timely
served.  See id.  An expert report Ahas not been served@ for
purposes of section 74.351(b) if elements of the report are found
deficient.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(c). 





[3]  In his motion
to dismiss, Group also complained Dr. Saqer=s report
does not state how Group deviated from the chiropractic standard of care, and
Group challenged Dr. Saqer=s qualifications to render an expert opinion on
causation, under section 74.403, arguing Dr. Saqer=s testimony was not based on a reasonable medical
probability.  On appeal, Group has
abandoned these two grounds for dismissal.





[4]  In Nicodeme
v. Bailey, 243 S.W.2d 397, 399B402
(Tex. Civ. App.CEl Paso 1951, writ ref=d
n.r.e.), two physicians testified on behalf of a patient in a medical
malpractice suit the patient filed against a chiropractor.  The court held the patient=s evidence failed to establish the chiropractor=s negligence was a proximate cause of the plaintiff=s injuries.  Nicodeme
does not address the specific issue of the doctors= qualifications to render an opinion against the
defendant chiropractor, but the court does acknowledge the chiropractor=s conduct should be judged against the chiropractic
system of healing.  Nicodeme, 243
S.W.2d at 401 (AThe lawful activity of a chiropractor is confined to
the treatment of the spine in a certain manner. 
In substance, the treatment is limited to the adjustment of the joints
or vertebrae of the spine.@).

 

Other cases cited by Vicento in his brief
involve medical malpractice claims brought against physicians analyzing whether
expert physicians who do not specialize in the same area as a defendant
physician are qualified to render an expert opinion.  See, e.g.,  Roberts v. Williamson, 111 S.W.3d 113
(Tex. 2003); Broders v. Heise, 924 S.W.2d 148 (Tex. 1996); Silvas v.
Ghiatas, 954 S.W.2d 50 (Tex. App.CSan
Antonio 1997, pet. denied).  These cases
do not apply newly enacted section 74.402, but they are nevertheless
instructive and provide guidance on the issue presented.





[5]  A conference
committee report on House Bill 4 conducts a side-by-side comparison of the
Texas House of Representatives= version of the bill with the Senate=s version.  Conference Comm. Report, Tex. H.B. 4,
78th Leg., R.S. (2003).  The report shows
the House=s version of section 74.402(b)(1) stated a person may
qualify as an expert under that subsection if the person  A(1) is
practicing health care in the same field of practice as the defendant health
care provider . . . .@  In contrast,
the Senate=s version of subsection (b)(1) stated a person may
qualify as an expert if the person A(1) is
practicing health care in a field of practice that involves the same type of
care or treatment as that delivered by the defendant health care provider, if
the defendant health care provider is an individual . . . .@  The Conference
Committee on House Bill 4 adopted the Senate=s
version, which does not require a qualified expert to practice in the
same field as the defendant health care provider, and this version was
enacted into law.  See id.  The difference in the wording between the
House and Senate versions may be due to concerns expressed by individuals who
testified at public hearings conducted by the Senate State Affairs Committee on
House Bill 4 regarding potential problems with the Ain the same field@
language.  Hearings on Tex. H.B. 4
Before the Senate State Affairs Committee, 78th Leg., R.S. 17B18 (April 15, 2003) (transcript available from Senate
Staff Services Office).





[6]  Under the
Occupations Code, A[a] person practices chiropractic . . . if the person:

(1)        uses objective or subjective means to analyze, examine, or
evaluate the biomechanical condition of the spine and musculoskeletal system of
the human body;

(2)        performs nonsurgical, nonincisive procedures, including
adjustment and manipulation, to improve the subluxation complex or the
biomechanics of the musculoskeletal system;

(3)        represents to the public that the person is a
chiropractor;  or

(4)        uses the term Achiropractor,@ Achiropractic,@ Adoctor of chiropractic,@ AD.C.,@ or any derivative of those terms or initials in
connection with the person=s name.

Tex. Occ. Code Ann. ' 201.002(b) (Vernon 2004).  The statute further provides the practice of
chiropractic does not include incisive or surgical procedures, the
prescription of controlled substances, dangerous drugs, or any other drug that
requires a prescription, or the use of x-ray therapy or therapy that exposes
the body to radioactive materials.  Tex. Occ. Code Ann. ' 201.002(c).